GARY M. MCLAUGHLIN (SBN 217832)
CHRISTOPHER K. PETERSEN (SBN 260631)
JONATHAN S. CHRISTIE (SBN 294446)
gmclaughlin@akingump.com
cpetersen@akingump.com
christiej@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone:    310.229.1000
Facsimile:    310.229.1001

Attorneys for Defendant, CEC ENTERTAINMENT, INC.

JAMES M. TRUSH, ESQ. (SBN 140088)
**TRUSH LAW OFFICE, APC**
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7187
Phone: (714) 384-6390; Fax:(714) 384-6391

TODD H. HARRISON, ESQ. (SBN 230542)
BRENNAN S. KAHN, ESQ. (SBN 259548)
**PERONA, LANGER, BECK, SERBIN,**
**MENDOZA & HARRISON, APC.**
300 East San Antonio Drive
Long Beach, California 90807
Phone: (562) 426-6155; Fax: (562) 490-9823

Attorneys for Plaintiff, RICHARD SINOHUI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| RICHARD SINOHUI, on behalf of himself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CEC ENTERTAINMENT, INC., a Kansas corporation; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No. 5:14-cv-02516-JLS (KKx)<br><br>[DISCOVERY MATTER]<br><br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 TO RESOLVE DISCOVERY DISPUTE REGARDING RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**<br><br>Hearing Date:    May 5, 2016<br>Time:             10:00 a.m.<br>Dept.:            3/4 3rd Floor<br>Discovery Cutoff: September 2, 2016<br>Pretrial Conf.    November 18, 2016<br>Trial Date:       December 13, 2016<br><br>Date Action Filed: October 10, 2014<br>Date of Removal:  December 5, 2014 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ......................................................................................... 1

   A.   Defendant's Introductory Statement ................................................ 1

   B.   Plaintiff's Introductory Statement .................................................. 4

II.   DISCOVERY IN DISPUTE ........................................................................ 7

   A.   CEC's Request for Production No. 51. ........................................... 7

       1.   CEC's Contentions ............................................................... 7

            a)   Background On Discovery In Dispute ...................... 7

            b)   The Discovery Standard ......................................... 14

            c)   Relevance ................................................................ 15

            d)   Attorney-Client Privilege. ..................................... 17

            e)   Work Product. ......................................................... 19

            f)   Privacy. ................................................................... 25

            g)   Conclusion .............................................................. 27

       2.   Plaintiff's Contentions ....................................................... 28

            a)   Background on the Discovery in Disputes ............. 28

            b)   Defendant Seeks to Invade the Attorney-Client Privilege ...... 38

            c)   Defendant Seeks Documents from Plaintiff Which He Does not Possess and Are Not His to Produce ...... 41

            d)   Defendant Seeks Protected Attorney Work-Product ............. 42

            e)   Defendant Seeks Private Materials Reflecting the Identities of Class Members Who Spoke with Plaintiff's Counsel and the Substance of Their Private Communications ...... 46

            f)   Defendant's Request has No Relevance to the Claims of This Litigation ...... 49

            g)   Conclusion .............................................................. 50

   B.   CEC's Request for Production No. 52. ......................................... 50

       1.   CEC's Contentions ............................................................. 50

i

2.    Plaintiff's Contentions ....................................................... 51

    a)    Defendant Seeks to Invade the Attorney-Client Privilege...... 51

    b)    Defendant Seeks Documents from Plaintiff Which He Does not Possess and Are Not His to Produce ..................... 55

    c)    Defendant Seeks Protected Attorney Work-Product ............. 56

    d)    Defendant Seeks Private Materials Reflecting the Identities of Class Members Who Spoke with Plaintiff's Counsel and the Substance of Their Private Communications .................................................................. 59

    e)    Defendant's Request has No Relevance to the Claims of This Litigation ........................................................................ 63

    f)    Conclusion .................................................................... 64

C.    CEC's Request for Production No. 54. ..................................... 64

    1.    CEC's Contentions .......................................................... 64

    2.    Plaintiff's Contentions ....................................................... 65

    a)    Defendant Seeks to Invade the Attorney-Client Privilege...... 65

    b)    Defendant Seeks Documents from Plaintiff Which He Does not Possess and Are Not His to Produce ..................... 66

    c)    Defendant Seeks Private Information.................................. 67

    d)    Defendant's Request has No Relevance to the Claims of This Litigation ........................................................................ 68

    e)    Conclusion .................................................................... 68

D.    CEC's Interrogatory No. 2. ..................................................... 69

    1.    CEC's Contentions .......................................................... 69

    2.    Plaintiff's Contentions ....................................................... 70

    a)    Defendant Seeks to Invade the Attorney-Client Privilege...... 70

    b)    Defendant Seeks Information s from Plaintiff Which He Does not Possess and is Not His to Provide ......................... 71

    c)    Defendant Seeks Protected Attorney Work-Product ............. 71

    d)    Defendant Seeks Private Information Reflecting the Identities of Class Members Who Spoke with Plaintiff's Counsel and Why They Did ................................................. 73

ii

|  |  | e) | Defendant's Request has No Relevance to the Claims of This Litigation ................................................................. 73 |

|  |  | f) | Conclusion ................................................................. 74 |

|  | E. | CEC's Interrogatory No. 3. ................................................................. 74 |
|  |  | 1. | CEC's Contentions ................................................................. 75 |
|  |  | 2. | Plaintiff's Contentions ................................................................. 75 |
|  |  | a) | Defendant Seeks to Invade the Attorney-Client Privilege ...... 75 |
|  |  | b) | Defendant Seeks Information s from Plaintiff Which He Does not Possess and is Not His to Provide .......................... 76 |
|  |  | c) | Defendant Seeks Private Information Reflecting the Identities of Class Members Who Retained Plaintiff's Counsel and Why They Did ................................................. 76 |
|  |  | d) | Defendant's Request has No Relevance to the Claims of This Litigation ................................................................. 77 |
|  |  | e) | Conclusion ................................................................. 78 |

|  | F. | CEC's Interrogatory No. 4. ................................................................. 78 |
|  |  | 1. | CEC's Contentions ................................................................. 78 |
|  |  | 2. | Plaintiff's Contentions ................................................................. 80 |
|  |  | a) | Defendant Seeks to Invade the Attorney-Client Privilege ...... 80 |
|  |  | b) | Defendant Seeks Information s from Plaintiff Which He Does not Possess and is Not His to Provide .......................... 80 |
|  |  | c) | Defendant Seeks Protected Attorney Work-Product ............. 81 |
|  |  | d) | Defendant Seeks Private Information Reflecting the Identities of Class Members Who Spoke with Plaintiff's Counsel and the Private Identities of Plaintiff's Counsel's Employees ................................................. 82 |
|  |  | e) | Defendant's Request has No Relevance to the Claims of This Litigation ................................................................. 83 |
|  |  | f) | Conclusion ................................................................. 84 |

|  | G. | CEC's Interrogatory No. 5. ................................................................. 84 |
|  |  | 1. | CEC's Contentions ................................................................. 84 |
|  |  | 2. | Plaintiff's contentions ................................................................. 85 |
|  |  | a) | Defendant Seeks to Invade the Attorney-Client Privilege ...... 85 |

iii

|  |  |  | b) | Defendant Seeks Information s from Plaintiff Which He Does not Possess and is Not His to Provide | 86 |
|  |  |  | c) | Defendant Seeks Protected Attorney Work-Product | 87 |
|  |  |  | d) | Defendant Seeks Private Information Reflecting the Identities of Class Members Who Spoke with Plaintiff's Counsel, When They Did and Why They Did | 88 |
|  |  |  | e) | Defendant's Request has No Relevance to the Claims of This Litigation | 89 |
|  |  |  | f) | Conclusion | 89 |
|  | H. | Depositions of Putative Class Members. |  |  | 90 |
|  |  | 1. | CEC's Contentions |  | 90 |
|  |  | 2. | Plaintiff's Contentions |  | 91 |
|  |  |  | a) | Defendant Seeks to Invade the Attorney-Client Privilege | 91 |
|  |  |  | b) | Defendant Seeks Protected Attorney Work-Product | 93 |
|  |  |  | c) | Defendant Seeks Private Information it is Not Entitled To | 94 |
|  |  |  | d) | Defendant's Request has No Relevance to the Claims of This Litigation | 94 |
|  |  |  | e) | Conclusion | 95 |
| III. | SANCTIONS |  |  |  | 95 |
|  | A. | CEC's Contentions |  |  | 95 |
|  | B. | Plaintiff's Contentions |  |  | 96 |

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2

# I.  **INTRODUCTION**

This Joint Stipulation is made following the conference of counsel pursuant to Local Rules 7-3 and 37-1 which took place on February 4 and 11, 2016.  Declaration of Christopher K. Petersen ("Petersen Decl."), ¶ 20, and Exs. DD and EE.

## A.  **Defendant's Introductory Statement**

CEC Entertainment, Inc. ("CEC") seeks to discover the non-privileged communications between putative class members and Plaintiff's counsel concerning this lawsuit.  This discovery is important because these communications likely deal with the substance of Plaintiff's claims.  CEC also has uncovered evidence that Plaintiff's counsel may have improperly solicited putative class members as individual clients, in violation of the Parties' protective order, made misleading statements to them, and pressured them not to cooperate with CEC.  With only just a few pieces of counsel's correspondence which CEC has been provided independent of its discovery, CEC has identified no less than 20 instances that are evidence of counsel's inappropriate conduct, a violation of the protective order, or both.  (These examples are highlighted ("h.") and numbered consecutively for the Court's scrutiny in Exhibits A-1 to A-5 to the Petersen Declaration.) CEC reasonably believes that the potentially dozens of other documents which counsel thus far has withheld would reveal a plethora of additional incriminating materials.  CEC is entitled to discovery in order to investigate these concerns.

CEC operates approximately 80 "Chuck E. Cheese's" restaurants in California.  Plaintiff is a former CEC General Manager ("GM") who alleges that he was misclassified as an exempt employee under California's Labor Code.  He asserts claims for unpaid overtime compensation, missed meal and rest breaks, inaccurate wages statements, and unreimbursed business expenses (for mileage and use of a personal cell phone for work).  Dkt. 26.  He sought to represent a class of approximately 125 current and former GMs who have worked for CEC in California from October 10, 2010 to the present.  *Id.* ¶¶ 33-43.

The discovery at issue grew out of a class list produced by CEC in September 2015

1  in advance of Plaintiff's motion for class certification.  The list was protected by the

2  Parties' protective order, and was <u>only</u> to be used for purposes of investigation,

3  prosecution, or settlement of this lawsuit.  After receiving the list, Plaintiff's counsel

4  immediately distributed a letter to every individual on the list – advising that their claims

5  could be worth a lot of money, that the GMs should not cooperate with CEC, and that

6  CEC could try to retaliate against them or force them to make untrue statements.

7  Petersen Decl. ¶ 2, Ex. A-1, at h. 6, h. 7, and h. 9.  The letter also touted "a variety of

8  other current and former CEC general managers who have already signed with our law

9  firms as clients," signaling counsel's desire to attract further clients, and gave the false

10  impression that these numerous GMs were already plaintiffs in the lawsuit.  *Id.*, at h. 1.

11  Soon thereafter, Plaintiff's counsel began calling putative class members, sending them

12  retainer agreements, and signing them up as individual clients.

13      Plaintiff filed his motion for class certification in October 2015.  In support,

14  Plaintiff filed declarations from 52 putative class members (including Plaintiff).  Counsel

15  claimed to individually represent all but two of them.

16      Soon thereafter, CEC heard from certain putative class members who had not

17  retained Plaintiff's counsel.  These GMs advised CEC that Plaintiff's counsel had tried to

18  solicit them, and made a variety of troubling and misleading statements, both verbally

19  and in emails.  These actions included sending one putative class member a retainer

20  agreement which he had not requested, pressuring him to sign a declaration for Plaintiff

21  by claiming "[t]his case can't go forward" without it, and telling him he had been

22  "brainwashed" by CEC when the information he provided did not support Plaintiff's

23  case.  Petersen Decl., ¶ 2, Ex. A-3 and A-5 (Zmily Decl. and Ex. B thereto), at ¶ 3 and

24  h. 19; Nidal Zmily Supplemental Declaration ("Zmily Suppl. Decl."), filed concurrently,

25  at ¶ 5.  Two other putative class members also reported that Plaintiff's counsel tried to

26  solicit them as clients, and suggested that they could recover more money if they "signed

27  up."  N. Martinez Suppl. Decl., filed concurrently, at ¶ 9; Petersen Decl. ¶ 8, Ex. G

28  (Castaneda Decl.), at ¶ 4.

1    This disturbing information led CEC to serve discovery, consisting of five requests

2    for production and five interrogatories, seeking copies of communications between

3    Plaintiff's counsel and putative class members, and related information.  Plaintiff

4    ultimately responded to the discovery on November 18, 2015, December 7, 2015, and

5    December 11, 2015, providing only objections to all the requests.  It is these requests

6    which are the subject of CEC's present motion to compel.

7    The issues regarding counsel's communications only came to light after Plaintiff

8    had filed his motion for class certification.  Thus, there was not sufficient time to

9    complete discovery before CEC's opposition was due.  Therefore, CEC filed an *ex parte*

10   application on November 5, 2015 seeking to continue the briefing and hearing on class

11   certification to allow more time for discovery.  The Court denied the continuance.  CEC

12   took a number of depositions of GMs who had provided declarations for Plaintiff.

13   Plaintiff's counsel instructed some of these deponents whom he represented not to answer

14   several CEC-posed questions.  CEC filed its opposition to class certification on

15   November 20, 2015, and the hearing proceeded on January 8, 2016.

16   Meanwhile, beginning in December and continuing through January and early

17   February, the parties met and conferred about CEC's discovery while awaiting a ruling on

18   class certification.  Plaintiff has continued to rest on his objections and refuse to provide

19   any documents or substantive responses, or even a privilege log.

20   The Court issued its class certification ruling on March 16, 2016, denying class

21   certification of the overtime, break, and wage statement claims, but certifying an expense

22   reimbursement class.  In its order, the Court noted that CEC is currently conducting

23   discovery on whether Plaintiff's counsel violated the protective order or made false or

24   misleading statements when communicating with putative class members, and that CEC

25   expects to raise those issues in a motion to disqualify.  Dkt. 55 at n.6.  The Court properly

26   deferred addressing those issues until CEC files its motion.

27   As discussed below, Plaintiff's privilege, work product, privacy, and other

28   objections are unfounded, and Plaintiff should be compelled to produce all non-privileged

3

communications his counsel had with putative class members.  To the extent Plaintiff continues to claim privilege or work product protection for any documents or information sought, he should be required to produce a privilege log.

### B.    Plaintiff's Introductory Statement

Ignoring that its prior *ex parte* application associated with its intended motion to disqualify failed despite relying on the exact same flawed evidence it now re-submits, here, CEC Entertainment, Inc. ("Defendant") begins anew its misguided crusade to disqualify Plaintiff, Richard Sinohui's ("Plaintiff"), attorneys from this lawsuit. Under the false guise of supposed "non-privileged," relevant discovery, Defendant seeks anything but. In truth, it demands that Plaintiff produce irrelevant, private and *privileged* materials, including work product. Even worse, Defendant seeks such not to address Plaintiff's or the class member's actual claims, but, rather, for the sole purpose of trying to obtain undiscoverable information that may somehow support its proposed motion to disqualify.

There is no legal authority which permits Defendant privileged and private information for the lone purpose of a motion for disqualification. This is especially true whereas Defendant's intended motion will likely fail. *See Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (the potential for less-than-scrupulous lawyers to use motions to disqualify as tactical weapons requires courts to subject these motions to "particularly strict judicial scrutiny.") As it did with its failed *ex parte* application, Defendant has cherry picked select statements out of context, and re-asserted previously discredited declarations, all to imply Plaintiff's counsel's impropriety where none actually exists. [1]  Furthermore, there is nothing unusual about class members contacting Plaintiff's counsel and/or obtaining legal advice. In fact, rather than criticizing

---

[1]    Defendant's present demands again rely on highly suspect and false evidence from three (3) current employees who seek to curry favor with their employer, all of which was already discredited as part of Plaintiff's opposition to Defendant's prior *ex parte* application. *See Wang v. Chinese Daily News*, 236 F.R.D. 485, 488 (C.D. Cal. 2012) (in wage and hour class actions, courts have observed that an ongoing employer-employee relationship is particularly sensitive to coercion).

1   Plaintiff's counsel for providing legal advice to putative class members, the

2   California Supreme Court has found such advice "laudable" while also recognizing that

3   such advice may result in a plaintiff's attorney being retained by additional putative class

4   members in the pending action. *See Colonial Life & Accident Ins. Co. v. Superior Court,*

5   31 Cal. 3d 785, 793, fn. 11, 795 (1982). Accordingly, given that its motion for

6   disqualification lacks sufficient support and will likely fail, Defendant's present demands

7   are even less tenable.

8   Moreover, even if Defendant's motion for disqualification served as some kind of

9   justification for the release of the materials Defendant demands, such documents and

10  information are still not discoverable for a variety of reasons, most of which Defendant

11  wholly ignores. First and foremost, Defendant demands that Plaintiff release every single

12  piece of paper and information related to Plaintiff's and the class members' contacts

13  and/or communications with Plaintiff's attorneys, regardless of the fact that <u>all of this</u>

14  <u>information is protected by the attorney-client privilege and/or as attorney work product</u>.

15  *See California Code of Civil Procedure* §2018.030 (an attorney's impressions,

16  conclusions, opinions or legal research, strategies or theories are not discoverable under

17  any circumstances because they are considered work product.) It is well established under

18  California law that communications originating from an individual seeking legal advice

19  from an attorney, <u>even if never retaining counsel</u>, are considered privileged, no less

20  communications between clients and their actual retained legal representation.  *See*

21  *Federal Rules of Evidence*, Rule 501; and *California Evidence Code* § 951 (**a "client [is]**

22  **a person who... consults a lawyer for the purpose of retaining the lawyer or securing**

23  **legal service or advice from him …'"** [Bold Added] Because there is no evidence of

24  waiver by any "client," Defendant cannot overcome these protections.

25  Second, regardless of the fact that the information sought is *per se* undiscoverable

26  for these two reasons alone, Defendant's demands ignore that, under Federal law, it is

27  also not enough that the information sought may potentially lead to relevant evidence;

28  rather, pursuant to *Federal Rules of Civil Procedure*, Rule 26(b)(1), only relevant

discovery is allowed. Defendant's demands are improper for this reason alone. Whether citing Plaintiff's individual claims of misclassification or the class' claims regarding expense reimbursements, there is nothing relevant about privileged communications between Plaintiff's attorneys and their clients having to do with legal representation. [2]

Third, Defendant fails to recognize that class members who have had contacts with Plaintiff's counsel, but did not retain Plaintiff's counsel, still possess privacy rights as to both their identities and their communications that cannot be waived without a showing of direct relevance. *See Foster v. Scent Air Techs, Inc.,* 2014 WL 4061260 (N.D. Call. August 15, 2015); and *Life Technologies Corp. v. Superior Court*, 197 Cal. App. 4th 640, 654 (2011). Similarly, whether a class member retained Plaintiff's attorneys as their individual legal representation or not, all such class members possess a privacy right as to the substance of such communications because such were made while reasonably believing they would not be disclosed to third parties, no less Defendant who, for many class members, is still their current employer. *See Tien v. Superior Court* , 139 Cal. App. 4th 528*,* 541 (2006) ("The identity of an attorney's clients is sensitive personal information that implicates the clients' rights of privacy" and "Clients routinely exercise their right to consult with counsel, seeking to obtain advice on a host of matters that they reasonably expect to remain private."). Given that the information sought has no relevance to the claims and/or defenses in this litigation, it implicitly lacks the "direct relevance" necessary to overcome Plaintiff's and/or these class members' privacy rights. Defendant cannot demonstrate how such privileged and private materials, no less the work product of counsel, are relevant to the claims asserted by Plaintiff or the class, no less so directly relevant to overcome the privacy rights of Plaintiff and the other class

---

[2] Further, even if these privileged and private communications offer some admissions unrelated to legal representation, but to the allegations of this lawsuit, such information can be much more easily had, without invading privacy rights or violating any privilege, by simply asking questions which elicit such "relevant" information at depositions.

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2

members who communicated with counsel. For these reasons, among others, all of

Defendant's demands for such testimony, information and/or documents must be denied.

## II.    DISCOVERY IN DISPUTE

CEC seeks production of documents, answers to interrogatories and reopened

depositions, all as set forth below.  CEC further seeks Rule 37 sanctions.

### A.    CEC's Request for Production No. 51.

CEC's Request for Production No. 51

All COMMUNICATIONS between YOUR attorney(s) and any PUTATIVE

CLASS MEMBER in this action since June 10, 2014.

Plaintiff's Response to Request for Production No. 51

Objection.  This request is overly broad, vague and ambiguous.  This request calls

for information in violation of the attorney-client privilege and the attorney work product

doctrine.  This request calls for speculation, lacks foundation and calls for a legal

conclusion.

1.    CEC's Contentions

a)    Background On Discovery In Dispute

In his initial discovery, Plaintiff sought contact information for every putative class

member (approximately 125 individuals).  *See* Petersen Decl. ¶ 3, Ex. B (Plaintiff's First

Set of Special Interrogatories).  Before producing that information, the Parties entered

into a Court-approved stipulation allowing putative class members the opportunity to opt

out of providing their contact information (*i.e.*, a *Belaire-West* procedure).  The

stipulation specified that the purpose of producing contact information was to allow

Plaintiff's representatives to "contact the individuals [who did not opt out] to discover

whether they have knowledge of the alleged Labor Code violations and alleged unfair

business practices."  Petersen Decl., ¶ 18, Ex. BB, at ¶ 4.  The stipulation further

specified that contact information shall be used "only for the purposes of investigating,

prosecuting and/or settlement of this litigation only," and would be treated as confidential

pursuant to the Parties' protective order, which was also approved by this Court.  *Id.* at

¶ 5. The protective order, in turn, likewise provides that any contact information of CEC's current or former employees "shall be used by Richard Sinohui and his counsel solely for the purpose of investigating, prosecuting, and/or settlement of this litigation." Petersen Decl., ¶ 19, Ex. CC, at § 6.1.  These two Court orders make clear that Plaintiff's counsel was not permitted to use the class list to solicit new clients or to assert new claims.

The *Belaire-West* procedure was completed and the class list was provided to Plaintiff's counsel on September 9, 2015.  Petersen Decl. ¶ 4, Ex. C.  That list identified 124 putative class members and their addresses and phone numbers.  Two days later, on September 11, 2015, Plaintiff's counsel sent a three page "mass mailing" on firm letterhead to every name contained on the list.  Petersen Decl. ¶ 2, Ex. A-1.  Counsel's intention to solicit these individuals as new clients was evident from the very first paragraph, which announced that he "currently represent[s] a former CEC General Manager, Richard Sinohui, and a variety of other current and former CEC general managers ***who have already signed with our law firms as clients.***" *Id.* at h. 1 (emphasis added).  One does not need to read between the lines to understand that counsel sought more clients through the letter, which went on to tell the putative class members not to sign anything CEC gives them "without first speaking to us or another attorney," in yet another attempt to engage these individuals as clients, not simply as witnesses from whom to seek information.  *Id.* at h. 7

On October 9, 2015, just four weeks after the mass mailing, Plaintiff's counsel informed counsel for CEC that he had "signed up" as clients 47 putative class members, all of whom had appeared on the class list provided by CEC, and that neither CEC nor its attorneys could contact them.  *See* Petersen Decl. ¶ 5, Ex. D.  On October 26, 2015, counsel informed CEC that he had "signed up" an additional five clients from among the individuals on the class list.  *Id.* at ¶ 6, Ex. E.  Shortly thereafter, Plaintiff's counsel informed CEC that he would seek to file individual lawsuits on behalf of each of the 51 GMs  represented (aside from Plaintiff) in the event class certification were denied, thus revealing the purpose behind obtaining these individuals as clients.  *Id.* at ¶ 2, Ex. A-2, at

8

h. 11.

A copy of Plaintiff's counsel's retainer agreement (obtained from a putative class member who declined representation) further reveals that the representation of these individuals is not limited to the present case.  Petersen Decl., ¶ 2, Ex. A-3 and A-4 (Zmily Decl. and Ex. A thereto), at ¶ 6 and h. 12.  The representation, as described in the agreement, extends to "potential claim(s) *as an individual* and/or as a class member," and is expressly "*not limited to*, Client's participation as a class member associated with the pending class action *Sinohui et al. v. CEC Entertainment, Inc.* []."  *Id.* (emphasis added).  The agreement also provides for Plaintiff's counsel to receive a 40% contingency fee from any recovery the GM receives—a further indication that the retainer agreement is to solicit clients for individual actions, not as class members.  *Id.* at h. 14.

Two putative class members who declined Plaintiff's counsel have reported that he sought to solicit them as clients over the phone or in person.  *See, e.g.,* Petersen Decl., ¶ 2, Ex. A-3 (Zmily Decl.) at ¶¶ 3-5 (Plaintiff's counsel attempted to solicit him as a client, sent him a retainer agreement, and repeatedly contacted him about signing the retainer agreement over a period of several days, even though Mr. Zmily never requested a retainer agreement or sought to be represented); Petersen  Decl. ¶ 8, Ex. F (N. Martinez Decl.), at ¶ 5 (Plaintiff's counsel sought to solicit him as a client when he tried to leave Plaintiff's counsel's office after an informational meeting).  And in an email to Mr. Zmily, which attaches the firm's retainer agreement, Plaintiff's counsel tells him "If you are fine with the [retainer] agreement and want to become my firm's client, *as soon as you can*, please initial each page and sign the last page."  Petersen Decl., ¶ 2, Ex. A-3 and A-4 (Zmily Decl. and Ex. A thereto), at ¶ 6 and h. 12 (emphasis added).

CEC also has uncovered evidence that counsel made misleading statements to putative class members in attempting to gain their assistance and participation in the lawsuit.  These distortions begin in the September 11 mass mailing, which incorrectly suggests that there are numerous GMs as named plaintiffs in the lawsuit.  The letter states that counsel represents "a variety of other current and former CEC general managers who

1    have already signed with our law firms as clients" and that "the general manager*s* who

2    ***have*** already sued can represent the rest of the group of general managers, such as you."

3    Petersen Decl. ¶ 2, Ex. A-1, at h. 1, h 10 (emphasis added). The impression created is

4    that many current and former GMs were already suing CEC. In fact, only a single

5    individual—former GM Richard Sinohui—is a named plaintiff or class representative.

6         In an email to Mr. Zmily, Plaintiff's counsel warns him that "[t]his case can't go

7    forward without, at least, getting declarations from you and the other general managers."

8    Petersen Decl., ¶ 2, Ex. A-3 and A-5 (Zmily Decl. and Ex. B thereto), at ¶ 7 and h. 19.

9    Of course, that statement is false. Whether this case could "go forward" was never

10   contingent on Mr. Zmily (or any other GM) providing Plaintiff with a declaration. The

11   statement can only be seen as an attempt to pressure Mr. Zmily to give his assistance in

12   the case and make him believe that he would impair other GMs from pursuing their own

13   claims if he did not provide a declaration. In a phone call with Mr. Zmily, Plaintiff's

14   counsel also misleadingly told Mr. Zmily that he "technically . . . represented all the class

15   members, including [Mr. Zmily]," because he "represented his interests as a potential

16   class member." Petersen Decl. ¶ 17, Ex. AA, at ¶ 56. No class had been certified at that

17   time, and Plaintiff's counsel had not been appointed class counsel. This statement was

18   misleading, as counsel did not represent Mr. Zmily, "technically" or otherwise. *See, e.g.,*

19   ABA Formal Opinion 07-445 ("A client-lawyer relationship with a potential member of

20   the class does not begin until the class has been certified and the time for opting out by a

21   potential member of the class has expired.") The statement wrongly suggests that signing

22   a retainer agreement is just a formality.

23        Counsel also gave misleading impressions to another class member about the

24   nature of his representation of putative class members. General manager Noe Martinez

25   met with Plaintiff's counsel after counsel invited Mr. Martinez to his office. Petersen

26   Decl., ¶ 7, Ex. F (N. Martinez Decl.), at ¶ 3. Mr. Martinez reports that, throughout the

27   meeting, counsel made it seem like the Company's lawyers could and would retaliate

28   against him, but that Plaintiff's counsel could "protect" him if he "signed up" as a client.

*Id.* ¶ 5.  And throughout the meeting, counsel gave Mr. Martinez the impression that he could only collect any money in this case if he retained Plaintiff's counsel.  N. Martinez Suppl. Decl, ¶ 9.  Only at the very end of the meeting, as Mr. Martinez was "walking out the door," and after he said that he was not interested in signing a retainer agreement, did Plaintiff's counsel tell Mr. Martinez that he could recover money regardless of whether he retained counsel.  Petersen Decl., ¶ 7, Ex. F (N. Martinez Decl.), at ¶ 7.

Another general manager, Octavio Castaneda, reports that Plaintiff's counsel told him that he could recover "around $125,000" based on his tenure as a GM, <u>if</u> he signed a retainer agreement.  Petersen Decl., ¶ 8, Ex. G (Castaneda Decl.), at ¶ 3.  Mr. Castaneda reports that counsel then told him that he could recover far less—only "approximately one year's worth of damages"—if he did not retain Plaintiff's counsel.  *Id.* ¶ 4.

The smattering of evidence CEC has obtained so far also shows that counsel has attempted to influence witnesses and their testimony in other ways.  To begin, the September 11 letter did not just seek information from witnesses, but also encouraged them to join the lawsuit and adopt Plaintiff's view of the case.  The letter entices them with the proclamation "***<u>Is This Potentially a Big Case?  Absolutely!!!</u>***  The claims made in this case potentially involve a significant amount of money."  Petersen Decl. ¶ 2, Ex. A-1, at h. 6 (original emphasis).  And without having spoken to these individuals, Plaintiff's counsel tells them that they have been misclassified, how many hours they worked, and how they spent their time:

- "CEC will argue that, because you were a salaried general manager and you were asked to "supervise" employees, you were properly classified as exempt from overtime wages and properly denied pay for your overtime hours worked.  This is simply not true."  *Id.* at h. 4.

- "Our class action alleges that . . . you and other general managers worked 60-80 hours per week while primarily (more than 50% of your time at work) performing the same duties and/or tasks as the non-salaried cast members

11

such as in kid check, the kitchen, the case register, the game room etc." *Id.* at h. 2.

- "[I]t appears that CEC general managers spend only around 15%-20% of their 60-80 hour work weeks on exempt duties." *Id.* at h. 3.
- "If you spend or spent more than 50% of your time at work doing the same tasks as the non-salaried cast members, then you are owed all of the overtime wages CEC failed to pay you. This lawsuit is dedicated to correcting that wrong and making sure you are paid all the monies you are actually owed." *Id.* at h. 5.

CEC also has evidence of counsel attempting to influence a witness' testimony in a phone conversation. During a call with Mr. Zmily, when Mr. Zmily contradicted Plaintiff's allegations and said that he sometimes voluntarily skipped breaks, but was able to take them if he wanted, counsel told him that CEC had "brainwashed" him. Petersen Decl., ¶ 2, Ex. A-3 (Zmily Decl.), at ¶ 4; Zmily Suppl. Decl., ¶ 5. Mr. Zmily and Mr. Martinez also report that counsel told other witnesses that Mr. Zmily was working with Plaintiff's counsel in the lawsuit, even though that representation was not true. Petersen Decl., ¶ 7, Ex. F (N. Martinez Decl.) at ¶ 4; *Id.* at ¶ 2, Ex. A-3 (Zmily Decl.), at ¶ 5. This was an improper effort to encourage – or even to pressure – those witnesses to cooperate.

Counsel also has tried to deter witnesses from cooperating with CEC, and wrongly suggests that CEC would try to mislead them or pressure them to make false statements. The September 11 mass mailing states:

> Companies in class actions sometimes attempt to mislead individuals to believe your claims aren't valuable or that you should sign statements for the company. As such, ***we highly suggest that you do not sign anything from CEC*** without first speaking to us or another attorney. Please understand that your claims are potentially valuable and signing documents that CEC may ask you to sign could harm your ability to recover in this case. Before signing anything ask yourself whether CEC has informed you of all the evidence, whether CEC has your best interests in mind and/or whether CEC is simply trying to protect its own interests at your expense.
> . . .

> You also have the right to reject any requests by CEC to assist CEC in their defense against this lawsuit . . . *[C]ompanies who defend class actions, like this one, often times attempt to put pressure on class members, such as yourself, to settle their claims or to help or assist the company in defending against the allegations by demanding that you make untrue statements*.

Petersen Decl. ¶ 2, Ex. A-1, at h. 7, h. 8, h. 9 and h. 10 (emphasis added). These paragraphs are scare tactics, designed to intimidate witnesses and dissuade them from cooperating with CEC. Similarly, counsel told Mr. Zmily in an email to "please be sure to not sign anything Chuck-E-Cheese gives you without first talking to me or another attorney." Petersen Decl., ¶ 2, Ex. A-3 and A-4 (Zmily Decl. and Ex. A thereto), at ¶ 6 and h. 13. Interfering with witnesses in this manner was improper. *See, e.g., In re McKesson HBOC Sec. Lit.*, 126 F. Supp. 2d 1239, 1244 (N.D. Cal. 2000) (limiting communications to potential class members by attorney who made misleading communications in order to retain witnesses as clients, and ordering that recipients have the option to rescind any retainer agreements).

The declarations that Plaintiff provided in support of class certification raise further concerns about whether putative class members provided false testimony in Plaintiff's declarations. A key issue in this case – and in any individual actions which may be filed – is the number of hours GMs worked per week. Hours worked bear not only on damages but also on what percentage of time GMs spend on managerial duties. In the September 11 mass mailing, counsel told the putative class that "you and other general managers worked 60-80 hours per week." Petersen Decl. ¶ 2, Ex. A-1, at h. 2. This same allegation—working 60-80 hours per week—later appeared in <u>every single one</u> of the 52 putative class member declarations that Plaintiff submitted. Petersen Decl., ¶ 21. Subsequently, half of the declarants who CEC has deposed (3 out of 6) admitted to working far fewer hours. *See* Petersen Decl., ¶ 9, Ex. H (Cardenas Tr. 75:23-80:10 (50 hours a week three weeks each month, but only 30 hours one week each month, because of Army reserve training)), and Ex. I, at ¶ 14; Petersen Decl., ¶ 14, Ex. P (Zapata Tr. 35:14-25 (averaged 50 hours per week for last 2 years)), and Ex. Q, at ¶ 14; Petersen

Decl., ¶ 11, Ex. K (Escobar Tr. 19:20-21:17 (only 50-60 hours a week)), and Ex. L, at ¶ 14.  Although these witnesses declared that CEC told them that they had to use their cell phones for work, in their depositions, at least four of them admitted that they were never so told.  The deposition testimony thus contradicts the declarations.  *See* Petersen Decl., ¶ 14, Ex. P (Zapata Tr. 134:21-23 ("Q: Has anyone ever told you that you had to have a cell phone?  A: No.")), and Ex. Q, at ¶ 23; Petersen Decl., ¶ 12, Ex. M (Rivas Tr. 178:18-21 (same)), and Ex. N, at ¶ 23; Petersen Decl., ¶ 11, Ex. K (Escobar Tr. 195:16-18 ("Q: Did anyone ever tell you that you had to have a cell phone?  A: Tell me that I had to have one, no.")), and Ex. L, at ¶ 23; Petersen Decl., ¶ 9, Ex. H (Cardenas Tr. 149:19-22 ("Q: Has anybody ever told you that you have to have a cell phone to be a general manager at Chuck E. Cheese?  A: No, nobody has ever told me, but I do – I technically need to have one.")), and Ex. I, ¶ 23.

After learning of the interactions between Plaintiff's counsel and putative class members described above, CEC served requests for documents and interrogatories seeking communications between Plaintiff's counsel and putative class members and related information (e.g., who contacted whom and when).  Petersen Decl., ¶ 15, Exs. R-Y.  Plaintiff responded with only objections to every request and interrogatory.  *Id.* During the meet and confer process, CEC made clear that it was not its intent to obtain legitimately privileged material.  Indeed, CEC is not seeking any communications with represented individuals after they signed retainer agreements.  Communications that pre-date the retention of counsel, though, should be produced, or at a minimum be accounted for on a privilege log if Plaintiff continues to assert privilege.  Plaintiff has rejected any compromise, and continues to refuse to comply with any of the discovery or even provide a privilege log.  *Id.*  As a result, CEC filed this motion.

b)     The Discovery Standard

Discovery under the Federal Rules of Civil Procedure is broad.  *See Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, 2016 WL 304564, at *3 (E.D. Cal. Jan. 26, 2016).  Relevance under Rule 26(b)(1) is "'construed broadly to encompass any

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Wit v. United Behavioral Health*, 2016 WL 258604, at \*10 (N.D. Cal. Jan. 21, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  "Rule 26 [also] expressly states that '[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable.'" *Id.* at \*11.[3]  Under this standard, CEC is entitled to communications – and information about those communications – between Plaintiff's counsel and putative class members that occurred outside the bounds of the attorney-client privilege, and is entitled to a privilege log for any other communications for which Plaintiff claims protection so that CEC (and the Court) can determine whether those communications should be produced.

c)     Relevance.

Plaintiff asserted no relevance objection in his response.  He has therefore waived that objection.  *See, e.g.*, *Ramirez v. Cty. of Los Angeles*, 231 F.R.D. 407, 409-10 (C.D. Cal. 2005) (refusing to consider "any objections that were not asserted in the responding party's original discovery responses").

In any event, the documents CEC seeks are undeniably relevant.  There is no question that communications discussing the lawsuit, or the allegations made in the lawsuit, meet the standard of relevance.  Indeed, the communications CEC seeks may discuss class members' work duties or hours, how they allocated their time between managerial and non-managerial work, their meal and rest break practices, and their use of personal cell phones or automobiles for work.  While the Court has denied certification of the overtime, break, and wage statement claims, Plaintiff's counsel has threatened to file individual claims on behalf of other GMs, and communications about use of cell phones

---

[3]     The recent amendments to Rule 26 do not alter this approach, as the comments relating to the 2015 Amendments explain that the purpose of the changes was to restore and reinforce the focus on proportionality in discovery but that the amendments did not change the court and the parties' existing responsibilities in determining the appropriate scope of discovery.  *Wit*, 2016 WL 258604, at \*10.

and autos remain relevant to the certified expense reimbursement claim.  *See Wit*, 2016 WL 258604 at *10.

These communications are also relevant to whether counsel solicited putative class members in violation of the Parties' protective order, made misleading statements to putative class members in seeking to obtain their cooperation and participation in the case, and attempted to influence their testimony, as described above.  While Plaintiff's counsel may argue that each of the 51 individuals (aside from Plaintiff) now represented individually coincidentally asked to be represented, without any encouragement or solicitation from counsel, that argument is dubious, and CEC is not required to accept it at face value.  CEC is entitled to discovery to ascertain whether Plaintiff's counsel solicited these individuals.  The communications with those individuals (before they signed on as individual clients) is the best source of information on whether any solicitation occurred.  The discovery sought may also reflect upon the credibility of witnesses, and shed light on why some class members signed inaccurate declarations, and whether others did so.

Counsel's conduct could also have bearing on class certification (i.e., whether the expense reimbursement class should be de-certified) and whether Plaintiff's counsel should be permitted to represent the class, or general managers individually.  *See, e.g., Yumul v. Smart Balance, Inc.*, No. CV-10-00927 MMM AJWX, 2010 WL 4352723, at *4 (C.D. Cal. Oct. 8, 2010) ("In determining whether a class should be certified, the court can properly consider whether proposed class counsel has acted ethically." (citing Fed. Rule. Civ. Proc. 23(g)); *Stavrides v. Mellon Nat. Bank & Trust Co.*, 60 F.R.D. 634, 636-37 (W.D. Pa. 1973) (ordering discovery relating to alleged improper solicitation activities and financial arrangements by plaintiffs' counsel with the client, as this issue bore on whether "class action status should be denied"); *see also Burda v. Fid. Nat'l Mgmt. Servs., LLC*, 2013 WL 11042668 (C.D. Cal. Mar. 25, 2013) (disqualifying attorneys who used class list to solicit new clients in violation of protective order).

16

d)      Attorney-Client Privilege.

CEC is not seeking communications between counsel and general managers *after* those general managers became counsel's clients.  Nor is CEC seeking communications between Plaintiff's counsel and class members regarding expenses *after* the Court's certification of the expense claim.  Counsel's argument that all other communications with general managers are privileged has no merit, or, at a minimum, requires a privilege log.

No class had been certified at the time of the communications in question, so none of the general managers were parties to this lawsuit at the time.  When Plaintiff's counsel contacted them (or vice versa), they were merely *putative* class members and witnesses.  There is no reason to conclude that communications with general managers that pre-date retention, or with other general managers who never retained counsel, would be privileged.

CEC has obtained emails that GMs received from Plaintiff's counsel that illustrate the types of non-privileged communications CEC is seeking.  In two emails given to CEC by Mr. Zmily, Plaintiff's counsel tells Mr. Zmily not to sign anything CEC gives him without first speaking to him or another attorney first, asks him to send any emails/documents relating to reducing man hours/labor or covering for cast member duties/functions, and asks for a declaration from Mr. Zmily that will "only take[] about 25 minutes" to put together, without which he says "[t]his case can't go forward . . . ."  Petersen Decl., ¶ 2, Ex. A-3, A-4, and A-5 (Zmily Decl. and Ex. A and B thereto), at h. 13, h. 14, h. 19, and h. 20.  Nothing in this email reflects any legal advice sought by Mr. Zmily.

Plaintiff's counsel also emailed Mr. Zmily a retainer agreement, and follows up in emails.  Mr. Zmily did not sign a retainer agreement, which these emails recognize.  Petersen Decl., ¶ 2, Ex.  A-3, A-4, and A-5 (Zmily Decl. and Ex. A and B thereto), at ¶¶ 6-7, h. 12 (asking Mr. Zmily to sign and return the retainer agreement "if" he wants to become his firm's client), and h. 18 (following up with Mr. Zmily because he "hadn't

received" a retainer agreement back from him).  And while one of the emails states that Mr. Zmily had requested the retainer agreement, Mr. Zmily himself states that he did not request it and never sought to be represented.  Petersen Decl., ¶ 2, Ex. A-3 and A-5 (Zmily Decl. and Ex. B thereto), at ¶ 5; *see also* Petersen Decl., ¶ 7, Ex. F (N. Martinez Decl.) at ¶¶ 4-5 (Plaintiff's counsel asked Mr. Martinez to sign a retainer agreement even though Mr. Martinez never asked to be represented and told him he was not interested in signing anything from counsel).  Therefore no privilege applies to these emails.  Nor would these two emails be privileged, even if Mr. Zmily had subsequently retained counsel, because Mr. Zmily was not seeking legal advice or seeking to be represented by Plaintiff's counsel in these emails.  *See, e.g., Kerner v. Superior Court*, 206 Cal. App. 4th 84, 117 (2012) ("[N]o attorney-client relationship arises for purposes of the privilege if a person consults an attorney for nonlegal services . . . .") (citing *People v. Gionis*, 9 Cal. 4th 1196, 1212 (1995)).  CEC suspects that there are many similar communications between Plaintiff's counsel and other general managers that likewise are not privileged.

Counsel contends that ***every*** communication with general managers is privileged, because ***every*** general manager sought legal advice.  It defies credulity to believe that every single person coincidentally sought legal advice or representation, without any solicitation or encouragement on the part of counsel.  But even if they did, that fact would not mean that every communication involved a request for legal advice or representation.  Any communications (or portions of communications) that do not involve a request for legal advice are not privileged and should be produced.  *See id.*

Finally, to the extent Plaintiff's counsel still maintains that any of the communications CEC is seeking are privileged, he must, at a minimum, account for them on a privilege log, thereby allowing CEC to assess the privilege claim.  *See* Fed. Rule Civ. Proc. 26(b)(5); *see also Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003) ("[W]hen a party seeks to withhold production of discoverable materials under the work product privilege, the party shall . . . describe the nature of the documents, communications, or things not produced in a manner that, without revealing information

itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."); *Morgan Hill*, 2016 WL 304564, at *5 (court overruled privilege objections, in part, because the producing party "has not provided a privilege log of the documents for which it claims privilege or other protection").  The existence of a communication and information about its context (i.e., the type of information that would ordinarily go into a privilege log) are not themselves privileged.  *Coy v. Superior Court*, 58 Cal. 2d 210, 219-20 (1962) (the fact of a meeting or communication with an attorney "is not a matter within the purview of the attorney-client privilege, even though it 'refers' to that relationship"); *Samuels v. Mix*, 22 Cal. 4th 1, 23 (1999) ("the attorney-client privilege does not protect 'independent facts related to a communication; that a communication took place, and the time, date and participants'") (quoting *State Farm Fire & Cas. Co. v. Superior Court*, 54 Cal. App. 4th 625, 640 (1997)).  Therefore, there is no excuse for Plaintiff not to at least provide a privilege log, which he has so far refused to do.

e)    Work Product.

Work product protection applies only to material that is "prepared in anticipation of litigation" by a party or that party's attorney. Fed. R. Civ. P. 26(b)(3).  The party asserting work product protection "bears the burden of proving that the material withheld meets the standards for material to be classified as work product."  *Garcia*, 214 F.R.D. at 591.

Work product protection "is intended only to guard against the divulging of attorney's strategies and legal impressions," and "does not protect facts concerning the creation of work product or facts contained within the work product."  *Garcia*, 214 F.R.D. at 591 (quoting *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 513 (D. Minn. 1997)).  Work product protection can be overcome by the party seeking discovery.  *Id.*

There are two types of work product: ordinary fact work product, and opinion work product.  *Kintera Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003).  Ordinary fact work product consists of "written or oral information collected by [an]

attorney [] verbatim or in summary form." *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificate Litig.*, 116 F.R.D. 297, 302 (C.D. Cal. 1987).  It is discoverable upon a showing of "substantial need" and the "inability to secure a substantial equivalent by alternate means without undue hardship."  *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005).  Opinion work product, on the other hand, consists of an attorney's mental impressions or legal strategies, and may be discovered only in rare circumstances.  *Id.*; *Kintera*, 219 F.R.D. at 507.  The communications CEC seeks here either are not work product at all or, if they are, consist merely of fact work product for which CEC has a substantial need and cannot obtain through other means.

The emails that CEC has already received from GMs are examples of communications between Plaintiff's counsel and putative class members that are not work product.  Plaintiff's counsel tells Mr. Zmily not to sign anything that CEC gives him, requests that Mr. Zmily send him certain CEC documents discussing labor hours and work duties, discusses the logistics of obtaining a declaration, misleads Mr. Zmily by telling him that the case cannot go forward if he does not give a declaration, and includes a retainer agreement with instructions on how to complete it.  *See* Petersen Decl., ¶ 2, Ex. A-3, A-4, and A-5 (Zmily Decl. and Ex. A and B thereto), at h. 12, h. 13, h. 14, h 19, and h. 20.  In an email with Octavio Castaneda, counsel simply left Mr. Castaneda his phone number and asked Mr. Castaneda to call him or let counsel know a good time to call.  *Id.* at ¶ 17, Ex. AA, at ¶ 41, Ex. I.  In another, Plaintiff's counsel gave Mr. Castaneda instructions on how to complete and return a retainer agreement, told him not to sign anything the Company gave him without first talking to Plaintiff's counsel, and asked Mr. Castaneda to pass his contact information along to other GMs.  *Id.*, ¶ 42, Ex. H.  None of these emails contain counsel's mental impressions or opinions about the case.

The communications CEC seeks may also include emails from general managers in which they describe their work experiences, how they spend their time managing their stores, or their use of personal cell phones and autos for work.  Such factual statements made by witnesses are not work product.  *See, e.g., Young v. California*, 2007 WL

2900539, at *1 (S.D. Cal. Oct. 1, 2007) (responses to questionnaire given to witnesses by attorney are not work product because they were "the verbatim statements of witnesses" – "factual observations of percipient witnesses, not the thoughts or impressions of counsel"); *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 653 (D. Alaska Mar. 23 1994) (verbatim witness statement, even one solicited by counsel, is not protected work product, noting that "[w]hat counsel are entitled to protect is *their* work and *their* thoughts and *their* analysis of the case, not the knowledge possessed by third parties") (original emphasis); *Schipp v. Gen'l Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006) (holding that "any verbatim non-party witness statements are neither privileged nor work product and must be produced").

Plaintiff's counsel may argue that communications relating to their efforts to prepare or obtain declarations are protected as work product. But the communications sought by CEC would not reveal any confidential work product regarding counsel's declaration process. In opposing CEC's *ex parte* to continue the class certification hearing date, counsel told CEC (and the Court) how he created declarations Plaintiff submitted. *See* Petersen Decl., ¶ 17, Ex. AA, at ¶¶ 29-33. Counsel drafted a template declaration to be used with all witnesses prior to contacting them. *Id.* He then contacted the declarant to review the 10-page declaration, and inserted the individual's employment history on the first page of the declaration, all of which counsel states took about 25 minutes per witness. *Id.* Given that each of the 52 declarations that Plaintiff submitted are virtually word-for-word identical (aside from employment histories), it is obvious that the declarants did not have any changes to the template declarations, or their changes are already apparent by comparing the various declarations. To the extent any of that information about the declaration process could have been work product, the protection has been waived. *See Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009) (waiver occurs when party "shows disregard" for work-product protection by making the information public). Statements by putative class members regarding the accuracy of their declarations, or suggesting changes that were

not later incorporated, also would not be work product because they would be factual statements by the witnesses themselves, not reflections of counsel's thoughts or impressions.  *See Young*, 2007 WL 2900539, at *1 (factual statements made by witnesses are not work product).[4]

Even if some of the communications might contain factual work product, they are discoverable because CEC has "a substantial need" for them and cannot obtain them any other way.  *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 641 (D. Colo. 2012) (overcoming work product protection where "substantial need" for materials existed and they could not be obtained any other way without "undue hardship").  CEC credibly believes that Counsel may have solicited putative class members, made misleading statements to them, and attempted to influence their testimony or participation in the lawsuit, at least in part, through the written communications that CEC now seeks. The communications could contain information that impeaches the credibility of those witnesses, or impacts whether Plaintiff's counsel should be permitted to represent a class or individual witnesses or plaintiffs.  There is no way effectively to evaluate the content or import of those written communications without seeing the communications themselves.  Neither interviews or depositions of witnesses, or any other source of information, is an adequate substitute for the discovery CEC seeks.  *See Roe*, 281 F.R.D. at 640-41 (communications with attorneys discoverable, because information contained in them not otherwise obtainable).

CEC cannot simply interview or depose all of these GMs, even if that process could be a suitable alternative.  Counsel purports to individually represent 51 of these other GMs, and has told CEC that it is not allowed to contact these GMs.  Further, Plaintiff's counsel has refused to expand the 10 deposition limit, thus denying CEC the opportunity to depose all but just three further witnesses beyond the seven ( Plaintiff plus

---

[4]   CEC is not seeking earlier drafts of the template declaration prepared by Plaintiff's counsel before it was sent to witnesses.  Nor is CEC seeking attorney notes (e.g. witness interview notes).

6 other GMs) who CEC has already deposed.  *See* Fed. R. Civ. Proc. 30(a)(2)(A)(i) (party may not take more than 10 depositions without leave of court).  In any event, it would not be practical for CEC to depose all 51 of the GMs counsel represents individually.  *See, e.g., Murphy v. Kmart Corp.*, 259 F.R.D. 421, 431-35 (D.S.D. 2009) (court refused to extend work product protection "sight unseen" to affidavits, as the alternative – taking depositions of over 85 individuals who signed the affidavits – was a "particular hardship" that was not warranted).

*Roe v. Catholic Health Initiatives Colorado* is instructive.  The plaintiff sought communications made by the defendant's attorney to 31 witnesses, all of whom defendant's counsel purported to represent.  281 F.R.D. at 634-35.  The emails, some of which the plaintiff had uncovered from other sources, demonstrated efforts to solicit these witnesses as clients and to provide them legal advice related to the lawsuit, even though they were not parties.  *Id.* at 640-41.  The fact that defendant's counsel represented 31 witnesses suggested that defendant's counsel was attempting to impede the plaintiff's investigation by representing these witnesses and not allowing the plaintiff direct access to them.  *Id.*  The Court held that communications between the defendant's counsel and these witnesses were discoverable, because they were "quintessential impeachment documents which would likely reveal bias, interest or motive for any witness's testimony," and because they "also might be used to show bad faith on the part of the defendant in attempting to muzzle witnesses and suppress the search for truth."  *Id.*  The impeachment value of these documents satisfied the plaintiff's "substantial need" for them, and there was no other way for the plaintiff to obtain the documents, because the "defendant [was] using the [work product] privilege to withhold release of the documents in discovery."  *Id.* at 641.

Plaintiff's counsel similarly claims to individually represent 51 GMs, and has told CEC that it cannot contact them.  Plaintiff's counsel also has sought to "muzzle" witnesses and impede CEC's investigation by telling everyone on the class list not to sign anything given to them by CEC (e.g. a declaration that CEC might use in its defense) and

1   threatening (without any basis) that CEC may try to mislead, pressure, or retaliate against
2   them.  As in *Roe*, Plaintiff's counsel's communications with these witnesses are relevant
3   for impeachment purposes and to show attempts to suppress or otherwise influence
4   witness testimony.  *Id.*  The Court should likewise order Plaintiff's counsel to produce the
5   communications with GMs.
6        To the extent there remains any doubt about whether the communications sought
7   should be produced, they must be identified on a privilege log.  *Garcia*, 214 F.R.D. at
8   591.  Redaction can be used in the (unlikely) event that portions of their written
9   communications contain "opinion" work product, with the redactions explained in a
10  privilege log and the remainder of the communications produced.  *Id.* at 598 (redacting
11  opinion work product from witness interview notes, and leaving factual portions intact, is
12  appropriate).  And if doubts over privilege cannot be resolved by the parties after that, an
13  *in camera* review by the Court may be appropriate.
14       During the meet and confer process, Plaintiff's counsel refused to provide a
15  privilege log because, according to him, even a privilege log would reveal the evaluation
16  or mental impressions of witnesses by showing how many times counsel contacted each
17  of them.  The context of this discovery shows that counsel has no reason for concern.
18  CEC produced contact information for putative class member witnesses to Plaintiff's
19  counsel, and Plaintiff's counsel then contacted individuals off that list, presumably as
20  many as could be reached.  Nothing about this approach indicates any evaluation of
21  witnesses.  Nor would the number of times Plaintiff's counsel corresponded with a
22  witness necessarily reveal anything about counsel's evaluation of that person.  The fact
23  that counsel sent multiple emails to one witness may simply have been due to that
24  witness not responding, and would tell CEC little, if anything, about what counsel
25  thought of the witness.  Counsel's concern also does not apply to putative class members
26  from whom he submitted declarations.  The fact that he obtained and submitted their
27  declarations already reveals counsel's evaluation of those witnesses—i.e., helpful enough
28  to have them sign a declaration.  There is no reason why communications with these

witnesses should not be logged, or why doing so would reveal anything further about counsel's evaluations of them.

f)      Privacy.

As with relevance, Plaintiff did not assert a privacy objection, and therefore waived it.  *See, e.g.*, *Ramirez v. Cty. of Los Angeles*, 231 F.R.D. 407, 409-10 (C.D. Cal. 2005) (refusing to consider "any objections that were not asserted in the responding party's original discovery responses").  Because Plaintiff belatedly raised that objection during the meet and confer process, however, CEC addresses it here.

Counsel has argued that all contact with putative class member witnesses is protected, because of each witness's right to privacy, relying on *Tien v. Superior Court*, 139 Cal. App. 4th 528 (2006) and *Hooser v. Superior Court*, 84 Cal. App. 4th 997 (2000). Neither case supports Plaintiff's argument here.

In *Tien*, the parties to a wage-and-hour class action jointly stipulated to an order under which a letter prepared by the parties and approved by the court was sent to putative class members describing the lawsuit in neutral terms and providing contact information for the plaintiff' counsel in the event putative class members wished to contact them.  *Tien*, 139 Cal. App. 4th at 532.  After the letter was sent, the defendant propounded interrogatories seeking the identities of the putative class members who contacted the plaintiffs' counsel in response to the letter.  *Id.* at 533.  The plaintiff objected on the grounds of privilege, work product, and privacy.  *Id.*  On appeal, the Court rejected the privilege and work product objections, but denied disclosure of the putative class member identities based upon privacy.  *Id.*  The Court reasoned that employees who wished to contact an attorney about their employment may be reluctant to do so out of fear of retaliation if their identities were disclosed.  *Id.* at 541.  *Tien* is distinguishable for several reasons.

First, the privacy concerns expressed in *Tien* would not apply to any putative class member whose contact with Plaintiff's counsel is already known.  Thus, for example, it would not apply to the 51 general managers who have already submitted declarations.

1    Second, *Tien* only protected the privacy interests of putative class members who

2 contacted the plaintiff's counsel on their own.  There is no such rationale for treating the

3 identity of putative class members as private if counsel contacted them, as opposed to the

4 other way around.

5    Third, in *Tien* the only communication to putative class members was a neutral

6 letter sent jointly by the parties.  The only arguably comparable letter the Parties sent here

7 was a *Belaire-West* notice, describing the lawsuit in neutral terms and giving putative

8 class members the opportunity to choose not to have their contact information revealed.

9 Shortly after this neutral notice, counsel sent his own, one-sided mass mailing to

10 everyone on the class list that was meant to advocate for Plaintiff's view of the case,

11 persuade GMs to cooperate with Plaintiff, participate in the lawsuit against CEC, and to

12 dissuade them from participating in CEC's defense.  The potential influence of this letter,

13 and other communications from Plaintiff's counsel, creates a highly improper dynamic

14 that was non-existent in *Tien*.

15    *Hooser* also make clear that privacy protections "evaporate" once the existence of

16 an attorney-client relationship becomes publicly known.  *Hooser*, 84 Cal. App. 4th at

17 1006.  In *Hooser*, an attorney who secured a settlement for a client later refused to

18 provide the client with the settlement funds.  *Id.* at 1001.  The client brought an action

19 against the attorney to recover the funds and sought names and contact information for

20 the attorney's other clients.  *Id.*  On appeal, the Court held that privacy protection did not

21 apply to any attorney-client relationship that was publicly known (e.g., if the attorney

22 openly acknowledged the representation).  *Id.*  Thus, there is no arguable privacy

23 protection for the identity of putative class members whose representation by Plaintiff's

24 counsel is already known.[5]

25

26    [5]   This same rationale applies equally to the two individuals who submitted
declarations to Plaintiff's counsel but did not retain him as counsel, as the public

27 disclosure of the declarations already demonstrates that those individuals communicated

28 and worked with Plaintiff's counsel.  *See Hooser*, 84 Cal. App. 4th at 1006**.**

Even if there were a privacy interest at stake, those interests are outweighed by the competing interest of "facilitating the ascertainment of truth in connection with [this] legal proceeding[]," and in "obtaining just results in litigation." *Hooser*, 84 Cal. App. 4th at 1004. In deciding whether privacy protection should be overcome, a court must consider "the right of a civil litigant to discover relevant facts, on the one hand, and the right of the third parties to maintain reasonable privacy regarding their sensitive personal affairs, on the other." *Id.* In doing so, the court "must consider the purpose of the information sought, the effect that disclosure will have on the affected persons and parties," the nature of the objections and the availability of less intrusive alternative means for obtaining the requested information. *Id.*

As discussed above, counsel's communications with putative class members are needed to evaluate the credibility of their testimony, as well as counsel's attempts to solicit them as clients, influence their testimony and participation in the case, and discourage cooperation with CEC. CEC's need for this discovery outweighs any possible privacy concerns. *See Roe*, 281 F.R.D. at 640 (evidence of improper communications with third-party witnesses discoverable as "quintessential impeachment" material). This fact pattern is in contrast to *Tien*, where the defendant had no particular need for the identity of putative class members who contacted plaintiff's counsel. Also, as the *Tien* Court explained, the defendant was free to contact any of the individuals who received the neutral letter to see if they would share any relevant information. *Tien*, 139 Cal. App. 4th at 540. Not so here. Counsel has refused to allow CEC to contact the 50 general managers now represented.

### g)    Conclusion

Plaintiff should be compelled to produce the communications requested. If a general manager is individually represented by Plaintiff's counsel, CEC is not seeking communications with counsel after that general manager signed a retainer agreement.

If Plaintiff contends that any other communications *in their entirety* contain requests for legal advice, legal advice provided in response to that request, or counsel's

27

opinions or analysis, those communications should be identified on a privilege log. To the extent Plaintiff contends that *portions* of any other communications contain such information, those portions of the communications should be redacted and identified on a privilege log, and the remainder of the communications produced.

### 2. Plaintiff's Contentions

#### a) Background on the Discovery in Disputes

Plaintiff initiated this action in October of 2014. Thereafter, Defendant removed this action to Federal Court. [Declaration of Brennan S. Kahn Submitted in Support of Opposition to Defendant's *Ex Parte* Application ("Kahn Decl."), DKT 49-1, ¶ 2][6]

***The Belaire-West Protective Order:*** On June 16, 2015, the parties entered into a protective order as to the class list, using the opt-out procedure consistent with *Belaire-West Landscape, Inc. v. Sup. Ct.* [Kahn Decl., DKT 49-1, ¶ 3, Exhibit ("Ex.") A]

***The Stipulation for an Extended Briefing Schedule***: On August 5, 2015, the parties executed a stipulation to continue the deadline to file the motion for class certification due to Defendant's inability to submit the class list on time. The parties also agreed to a briefing schedule that provided Defendant a full six (6) weeks - or a month more than it was owed - to file its opposition. [Kahn Decl., DKT 49-1, ¶ 4, Ex. B]

***The Class List***: On September 9, 2015, after the class members had all received 30 days to opt-out from having their information disclosed, Plaintiff received the class list. It included 124 names and addresses, with only one "opt-out" excluded. The class list included 56 class member telephone numbers. [Kahn Decl., DKT 49-1, ¶ 5, Ex. C]

***Size of the Putative Class***: There are 125 class members in this action, including 77 who are still employed by Defendant. [Kahn Decl., DKT 49-1, ¶¶ 2 & 7, Ex. C]

---

6  Because the issues of the present dispute were already addressed by Plaintiff's counsel, Brennan S. Kahn's, declaration previously filed as part of Plaintiff's opposition to Defendant's unsuccessful November 2015 *Ex Parte* Application associated with its intended Motion to Disqualify, in lieu of re-filing the same exact declaration and exhibits, Plaintiff incorporates Mr. Kahn's declaration, including all the exhibits submitted therewith, by reference as item 49-1 of the Court's docket.

***Plaintiff's Mass Mailing***: On September 11, 2015, Plaintiff sent a mass mailing to the addresses in the class list, asking the class members to "discuss the work [they] did for [Defendant]" and which explicitly stated that **"it is your right to participate as much or as little... as you decide"** and asked them to contact Plaintiff's counsel, while stating they were **"not required to do so."** [Kahn Decl., DKT 49-1, ¶ 6; Ex. D]

***Plaintiff's Contacts with Class Members:*** Throughout this litigation, including well before Defendant ever provided the class list, Plaintiff's counsel has had numerous contacts with the class members, many of which retained Plaintiff's counsel, again, well before Defendant ever provided their contact information:

- <u>Class Members Sought Out Legal Representation, Not the Other Way Around</u>: At no time has Plaintiff's counsel ever solicited any class members to become clients. <u>At all times, such clients solicited Plaintiff's counsel's legal representation first after learning of their legal claims.</u> [Kahn Decl., DKT 49-1, ¶¶ 16-18]

- <u>Current GMs Sought Out Legal Representation Due to Their Concerns of Retaliation by Defendant</u>: Typically, the class members who are current employees - nearly two thirds of the entire class - have expressed fears regarding retaliation, leading to questions about how they could protect themselves. After these questions are answered, such individuals have often sought legal representation, and then ask to be provided a retainer agreement. <u>It is only after having asked for one has a class member ever been provided a retainer agreement.</u> [Kahn Decl., DKT 49-1, ¶¶ 19-22]

- <u>Plaintiff's Counsel Has Not Sent a Retainer Agreement to Every Class Member They Have Spoken To</u>: Plaintiff's counsel has had substantive conversations with nearly 80-90 class members, yet only about two-thirds of those individuals asked for retainer agreements and received them. <u>Plaintiff's counsel does not send retainer agreements to individuals who do not ask for them.</u> [Kahn Decl., DKT 49-1, ¶ 23]

29

- <u>Nearly Two-Thirds of the Individuals Who Retained Plaintiff's Counsel Were First Communicated With By Plaintiff's Counsel Without Using the Class List</u>: Plaintiff's counsel presently represents 53 class members, including Plaintiff. Counsel had communications with 36 of these 53 individuals before receiving the class list and/or without Defendant providing their phone numbers. [Kahn Decl., DKT 49-1, ¶ 24; Ex. C]

- <u>Not Every Class Member Who Provided a Declaration Retained Plaintiff's Counsel as Their Legal Representation</u>: Class members have never been told that they have to sign retainer agreements to have their claims pursued. In fact, there are two class members who have not retained Plaintiff's counsel despite each providing declarations to support class certification. [Kahn Decl., DKT 49-1, ¶ 25]

- <u>Every Class Member Who Has Signed a Declaration Had a Full Opportunity to Review it Before Signing it</u>: Plaintiff has submitted a total of 55 class member declarations, including Plaintiff's. All of these declarations were based off a template declaration finalized on September 21, 2015. The declaration are never provided on a take it or leave basis. Class members were given the full opportunity to review the declaration before signing it. Plaintiff's counsel usually takes 25-35 minutes to prepare a declaration with a class member, who can also make any changes to the template they have wanted to and, in many instances, have.  [Kahn Decl., DKT 49-1, ¶¶ 28-33, 60; Ex. K]

***Plaintiff's Representation of Class Members***: On October 9, 2015, Plaintiff informed Defendant that his counsel represented 47 new class members (a number which has since risen to 52 class members). [Kahn Decl., DKT 49-1, ¶¶ 8 & 11, Exs. E & G]

Plaintiff's ***Motion for Class Certification***:  On October 9, 2015, Plaintiff filed his motion for class certification, which included, as supporting evidence, 49 declarations out of the 125 total class members. [Kahn Decl., DKT 49-1, ¶ 8]  On November 20, 2015,

Defendant filed its opposition to Plaintiff's motion. [DKT 51] On December 18, 2015, Plaintiff filed his reply. [DKT 52]

***Defendant Takes and Completes the Depositions Six (6) Class Members Who Submitted Declarations in Support of Class Certification:*** After receiving Plaintiff's motion for Class Certification, on November 3, 4 and 5, 2015, Defendant completed six (6) depositions of class members who submitted declarations. [Kahn Decl., DKT 49-1, ¶ 13] Notably, while each deposition lasted between three and four hours, as reflected by Defendant's arguments, the number of discrepancies between their testimony and their declarations can be counted on one hand. At these depositions, upon instruction by counsel, the deponents refused to provide any attorney-client communications.

***Defendant's Failed Ex Parte Application***: On November 5, 2015, Defendant filed its Ex Parte application to continue the class certification briefing schedule so to provide it more time to conduct discovery and to file a motion to disqualify Plaintiff's counsel. [DKT 48] Plaintiff opposed Defendant's *Ex Parte* application, in part, for lack of "good cause" due to the likelihood that its proposed motion to disqualify would fail. [DKT 49]

On November 12, 2015, the Court denied Defendant's Ex Parte application due to "no showing of good cause." [DKT 50] Notably, Defendant's unsuccessful *Ex Parte* application relies on the same discredited statements by declarants – all current employees – re-submitted by Defendant as part of the present discovery dispute.

Defendant's Ex Parte. [DKT 48-8, 48-11 & 48-12]:

- Octavio Castaneda's False Declaration: Mr. Castaneda's declaration submitted with Defendant's *ex parte* application, and with Defendant's current motion, makes a variety of false claims. Mr. Castaneda's two sisters are both employed by Defendant as a GM, and are both class members who retained Plaintiff's attorneys as their legal representation. [Kahn Decl., DKT 49-1, ¶ 35]. Mr. Castaneda was never told that he could only get one year's worth of wages, or that his recovery would be $125,000. [Kahn Decl., DKT 49-1, ¶¶ 44 & 45].  He was never told he had to sign a retainer agreement; rather, he asked to be

provided a retainer and solicited legal representation, he asked Plaintiff's counsel to review a document for him that Defendant wanted him to sign and he provided Plaintiff with his e-mail for the specific purpose of receiving the retainer agreement. [Kahn Decl., DKT 49-1, ¶¶ 39- 41; Ex. H]. He was not given a deadline to sign a retainer agreement and was never pressured to sign it. Instead, he was only told that if he wanted to provide a declaration, that he would need to provide it before Plaintiff's class certification motion had to be filed. [Kahn Decl., DKT 49-1, ¶ 44, 45, 47 & 60; Exs. H & K]  Plaintiff's counsel never ignored Mr. Castaneda's experience. In fact, Plaintiff's counsel never had the chance to because Mr. Castaneda never followed through with his agreement to provide a declaration despite setting up an appointment for October 1, 2015 to do so. [Kahn Decl., DKT 49-1, ¶¶ 48 & 49] Mr. Castaneda also stated that he was afraid of retaliation, wanted to get promoted and was being pressured by Defendant, and his direct supervisor, to not directly participate in this case or else ruin his future. [Kahn Decl., DKT 49-1, ¶¶ 38, 43, 44 & 47] Notably, while Defendant has provided a supplemental declaration for Mr. Zmily and Mr. Martinez with its motion, it has not for Mr. Castaneda.

- Nadel Zmily's False Declaration:  Mr. Zmily's declaration submitted with Defendant's *ex parte* application, and with Defendant's current motion also makes a variety of false claims. Mr. Zmily was never told that he would receive any exact dollar amount if he was represented by Plaintiff's counsel; rather, he was told that there was no guarantee of any recovery and, at his request, was provided an example of how a class member's claims could be calculated. [Kahn Decl., DKT 49-1, ¶ 52] He was never told the case would be stronger if he signed a retainer, only that it would be if he provided a declaration. Plaintiff's counsel never told Mr. Zmily Defendant would retaliate against him if he didn't sign a retainer. Rather, Mr. Zmily expressed concerns regarding retaliation if he signed a declaration, then was informed of his rights to not be

32

retaliated against and to retain legal counsel if he wanted to. [Kahn Decl., DKT 49-1, ¶ 53 & 54] Mr. Zmily requested legal representation, request a retainer agreement and then provided his e-mail address for the specific purpose of receiving the retainer.  [Kahn Decl., DKT 49-1, ¶¶ 57-59; Ex. J]  In fact, evidencing another reason why Plaintiff's counsel would have never risked making any false representations to Mr. Zmily, Mr. Zmily specifically stated that he had a family member, who was an attorney, who he wanted to talk about these issues with and who he wanted to review the retainer agreement before signing it.  [Kahn Decl., DKT 49-1, ¶¶ 57 & 58] Mr. Zmily confirmed to Plaintiff's counsel that he had the same legal claims as the rest of the class members. [Kahn Decl., DKT 49-1, ¶¶ 50 & 51] While he agreed to provide a declaration, he never actually followed through with his agreement and never assisted Plaintiff's counsel in putting the declaration together. [Kahn Decl., DKT 49-1, ¶¶ 55 & 62] Plaintiff's counsel followed up, asking Mr. Zmily for 25 minutes to put the declaration together, but he never responded. [Kahn Decl., DKT 49-1, ¶¶ 32, 60-62; Ex. K]

- <u>Noe Martinez's False Declaration</u>: Mr. Martinez's declaration submitted with Defendant's *ex parte* application, and with Defendant's current motion, makes a variety of false claims as well. Plaintiff's counsel called Mr. Martinez four times, one or two of which occurred after he had asked to be called back. At no time was he ever called at midnight. [Kahn Decl., DKT 49-1, ¶¶ 63 & 64] While Mr. Martinez claims he was "harassed," he thereafter still decided, without any invitation by Plaintiff's counsel, to attend a meeting with another class member - whom he failed to mention - that had originally been set to occur with only that class member. [Kahn Decl., DKT 49-1, ¶¶ 66 & 72] During the hour long meeting, Mr. Martinez never asked to leave, repeatedly expressed his concerns about retaliation and wanted assurances he would not be the only class member to sign a declaration, which is when he brought up Mr. Zmily.

Plaintiff's counsel confirmed Mr. Zmily had said he wanted to retain legal representation, but that he had never followed up for an unknown reason. [Kahn Decl., DKT 49-1, ¶¶ 68-70 & 73] When he learned that individuals in his district had not yet provided declarations, he then explained that due to his district manager's relationship with upper management, those in his district were especially concerned about retaliation and hesitant to participate. [Kahn Decl., DKT 49-1, ¶ 70]  Plaintiff's counsel never told Mr. Martinez a dollar amount he would receive, nor made it contingent on being represented by Plaintiff's counsel. [Kahn Decl., DKT 49-1, ¶ 71] It was also always made clear that he did not need to retain an attorney or directly participate for his interests to be represented, not just at the end of the meeting. [Kahn Decl., DKT 49-1, ¶¶ 68 & 74] Mr. Martinez never asked for a retainer or to sign a declaration, which is why he received neither. [Kahn Decl., DKT 49-1, ¶ 75]

***Defendant's Discovery Requests for Privileged, Private and Irrelevant Information from Plaintiff and Third Party Class Members:*** On October 19, 2015, November 6, 2015 and November 11, 2015, Defendant served four sets of discovery – Requests for Production ("RFP") sets 3 and 4 and Interrogatories ("ROG") sets 2 and 3 – which each contained requests for information protected by the attorney client privilege, the attorney work product doctrine and the constitutional right to privacy:

- RFP set 3 included Defendant's requests numbers 51 through 53, which demanded the following protected and privileged documents: (1) all communications between Plaintiff's counsel and any class member, (2) all documents provided or received from any class member and (3) all documents relating to any declaration provided to or received from any class member.
- RFP set 4 included request number 54, mislabeled as request number 50, which sought all retainer agreements, whether signed or unsigned, sent to or received from any class member.

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2

- ROG set 2 included ROG requests numbers 2 through 4, which demanded the following protected and privileged information: (1) the date on which an attorney-client relationship with any class member was formed, (2) the date any class member signed a retainer agreement and (3) the identity of each individual employed by Plaintiff's attorneys' law firms who had any communications with class members.

- ROG set 3 a single request, number 5, which sought the date on which any of Plaintiff's attorneys first spoke with a class member and who initiated the contact.

Notably, as such was defined in Defendant's discovery requests, the term "class member" implicitly included Plaintiff. Thus, each request sought privileged and protected information reflecting communications between Plaintiff and his attorneys as well. [Declaration of Christopher Petersen ("Petersen Decl."), Exs. R – U]

***Plaintiff Objects to Defendant's Discovery Requests for Privileged, Private and Irrelevant Information from Plaintiff and Third Party Class Members:*** From November 11, 2015 through December 11, 2015, Plaintiff served his responses and objections to each of Defendant's four sets of improper and invasive discovery:

- RFP set 3, request No. 51 sought all communications between Plaintiff's counsel and any class member. Request No. 52 sought all documents provided to or received from any class member. Request No. 53 sought all documents relating to any declaration provided to or received from any class member. <u>Notably, because Plaintiff is included within the definition of "class member," each of these requests sought all communication between counsel and Plaintiff himself.</u> For obvious reasons, Plaintiff objected to each of these requests based on privilege and work product, as Defendant is not entitled to any communications between Plaintiff and his counsel, nor between third party class members and their counsel. Inherent to such objects is a privacy objection as well

because these individuals made such communications with the expectation that they would not be revealed pursuant to the privilege and, likewise, that the identities of who made such statements would not revealed due to the privilege, making all such communications inherently private. <u>Even request No. 54 sought much more than just signed or unsigned declarations, but all documents which related to the declarations, thus implicitly demanding not just work product, but attorney-client communications as well</u>. Similarly, Plaintiff objected to calls for speculation and lacks foundation because Plaintiff does not possess communications between his counsel and the class members. Rather, within their independent relationship as attorneys for select class members, such communications are in the possession of these class members, not Plaintiff. Plaintiff cannot produce documents which are not his to produce and/or which he does not possess.

- RFP set 4, request No. 54 sought all retainer agreements, whether signed or unsigned, sent to or received from any class member. Plaintiff objected to this request based on privilege because such documents implicitly include communications between attorneys and their clients. Likewise, Plaintiff objected relevance because a retainer agreement does not add anything of value or any information relevant to the claims or defenses in this litigation. Plaintiff also objected to privacy, because (1) such agreements are private, (2) they reflect Plaintiff's counsel's proprietary information and (3) the identities of who specifically retained Plaintiff's counsel (including those who may have not yet agreed to disclose such) and the terms of that retainer are private. Lastly, Plaintiff objected to calls for speculation and lacks foundation because Plaintiff does not possess any retainer agreements executed between his counsel and the class members. Rather, within their independent relationship as

attorneys for select class members, such retainer agreement are in the possession and control of these class members, not Plaintiff. Plaintiff cannot produce documents he does not possess nor are his to produce.

- ROG set 2, number 2 sought the date on which an attorney-client relationship with any class member was formed, number 3 sought the date any class member signed a retainer agreement and number 4 sought the identity of each individual employed by Plaintiff's attorney's law firms who had any communications with class members. Likewise, ROG set 3, number 5, sought the date on which any of Plaintiff's attorneys first spoke with a class member and who initiated the contact. As to each of these requests Plaintiff objected to privilege and work product because clearly such questions cannot be answered without revealing attorney-client communications. Likewise, Plaintiff objected to privacy because the class members, who are not parties to this action and, many of which, are still employed by Defendant and fear retaliation as a result, have a right to not have to reveal when they first retained an attorney or who they spoke with about their individual claims. Likewise, Defendant does not have a right to the identity of individual employees of Plaintiff's counsel's law firms who spoke to these class members as such individuals also have a right to privacy. The requests also lack any notion of relevance as such information has nothing to do with the claims or defenses asserted in this action. Finally, again, Plaintiff objected to speculation and lacks foundation because such information is not his to produce, nor does he possess such information. Rather, that information is in the possession of these third party class members, who would require a subpoena to provide it. [Petersen Decl., Exs. V – Y]

**_The Court Grants the Motion for Class Certification in Part, and Denies It In Part:_** On January 8, 2016, the Court held its hearing on Plaintiff's motion for class

37

1  certification, taking the matter under submission. [DKT 54] Ultimately, on March 16,

2  2016, the Court then issued its ruling, granting certification as to Plaintiff's cause of

3  action for unpaid business expense reimbursement, but denying it in as to all other causes

4  of action, with the exception of Plaintiff's representative PAGA claims. [DKT 55]

5              b)     Defendant Seeks to Invade the Attorney-Client Privilege

6         Defendant contends that it is not seeking communications between clients and their

7  counsel after those general managers became Plaintiff's attorneys' individual retained

8  clients. However, upon a cursory review, RFP No. 51 makes no distinction between pre-

9  or post-retainer communications. Likewise, RFP No. 51 makes no distinction between

10 individuals who retained Plaintiff's counsel and individuals who did not. Rather, **RFP**

11 **No. 51 asks for *every single communication* between the attorneys and every class**

12 **member they spoke to, whether represented or not, since June 2014, or, in other**

13 **words, since six (6) months before the litigation was ever filed to the present**.

14 Therefore, it is also clear that this request was specifically meant to acquire

15 communications between Plaintiff himself and his specific legal representation. Lastly, it

16 is also irrelevant as to whether communications were made before or after an individual

17 officially retained an attorney – any communications made in seeking potential legal

18 representation or simply seeking legal advice from an attorney are still privileged and

19 protected under California law.

20        Under *Federal Rules of Evidence,* Rule 501, in any civil case, "state law governs

21 privilege regarding a claim or defense which state law supplies the rule of decision."

22 Therefore, as this litigation relies on California law, so must any arguments as to the

23 attorney-client privilege and/or privileged attorney work product.  Under California law,

24 the privilege is not just created when a client signs a retainer agreement. Rather, a client

25 becomes a "client" when an individual either seeks to retain an attorney or seeks legal

26 advice from an attorney. Specifically, under *CA Evidence Code* §951, a **"'client' means a**

27 **person who... consults a lawyer for the purpose of retaining the lawyer or securing**

28 **legal service or advice from him in his...'"** [Bold Added] *See Hooser v. Superior Court*

(2000) 84 Cal. App. 4th 997, 1003. ("The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions.").

Per *California Evidence Code* § 952, all communications between a "client," which would include someone who may have only sought legal advice without even retaining the attorney, and the attorney regarding said legal issues, are privileged:

> **"'confidential communication[s] between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and <u>includes a legal opinion formed and the advice given by the lawyer in the course of that relationship</u>."**
> [Bold and Underline Added]

At all times, <u>every document in Plaintiff's counsel's possession that reflects a communication with a class member reflects a communication made in seeking legal advice, if not outright legal representation and/or after having retained counsel</u>. The mere fact that some class members sought legal advice without ultimately retaining my firm provides absolutely no distinction regarding the application of the attorney-client privilege. *See Tien v. Superior Court* , 139 Cal. App. 4th 528, 537 (2006) ("[F]or purposes of the attorney-client privilege analysis, there is no basis to distinguish between class members who retained plaintiffs' counsel and those who did not."). Additionally, there are many individuals - such as Mr. Zmily and Mr. Castaneda - who sought out Plaintiff's counsel's legal representation but ultimately decided not to for fear that if they actively participated in the class action, Defendant would retaliate against them. As such, simply that some class members sought legal representation but did not follow through by ultimately retaining counsel does not mean those class members did not initially seek out

legal representation and/or seek out legal advice during their communications. No matter, pursuant to the authorities above, whether they sought out legal representation or only legal advice, the privilege still applies and protects these communications all the same.

Consequently, despite Defendant's arguments to the contrary, any communications with those class members Plaintiff's counsel communicated with, regardless of whether they ultimately retained counsel or not, are confidential and protected by the attorney-client privilege. Therefore, Defendant's RFP No. 51, which seek any and all documents reflecting communications exchanged between any class members after and before they retained counsel, is an improper request because it seeks information protected by the attorney-client privilege.  In fact, RFP No. 51 seems to seek nothing else but attorney-client communications. This makes no mention of the fact, of course, that, given the over breadth of Defendant's RFP, if  it was complied with it would require that Plaintiff's own attorneys turn over communications between them and Plaintiff himself, as he is also a putative class member per Defendant's definition contained within its RFP.

Because all of these communications clearly fall under the attorney-client privilege under California law, the only means by which such information can be disclosed is by a waiver of the individual who possesses the information. In other words, because Plaintiff has established that the documents in question are privileged, under California law, the burden shifts to Defendant to disprove the foundational facts or to establish a waiver. *See CA Evidence Code* § 405; *HLC Properties, Ltd. v. Superior Court (MCA Records, Inc.)*, 35 Cal. 4th 54, 59-60 (2005); *San Diego Professional Ass'n v. Superior Court*, 58 Cal. 2d 194, 199 (1962); *Roman Catholic Archbishop of Los Angeles v. Superior Court*, 131 Cal. App. 4th 417, 442 (2005); and *OXY Resources, Calif. LLC. v. Superior Court*, 115 Cal. App. 4th 874, 894 (2004). The means by which privilege may be waived is controlled by statute. *See CA Evidence Code* § 912; and *Manela v. Superior Court,* 177 Cal. App. 4th 1139, 1147-1148 (2009).  Moreover, any waiver is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver. *See Transamerica Title Ins. Co. v. Superior Court,* 188 Cal. App. 3d 1047, 1052 (1987).

1   With the present dispute, while Defendant can speculate all it wants about what the
2   available documents contain as part of its improper fishing expedition, Defendant has not
3   provided any evidence which rebuts any presumption that the communications sought
4   are, in fact, privileged and/or protected work product. Moreover, Defendant has not
5   provided any legal argument as to how there has been any waiver of said privilege, which
6   would permit the Court to force Plaintiff's counsel to turn over documents reflecting
7   communications with their clients. For these basic reasons, the Court must not require
8   that the documents sought be produced.

9   Lastly, Defendant would require that Plaintiff produce a privilege log, such a
10  request is inappropriate here and would only serve as an end around to acquire the same
11  information that Defendant is not entitled to. Specifically, as discussed in more detail
12  below, a privilege log would require that Plaintiff identity the names of class members
13  who sought out legal advice and/or legal representation, when they did and if they ever
14  signed a retainer, thereby revealing not just privileged information, but private
15  information. Whereas many of Plaintiff's counsel's clients are still employed by
16  Defendant and/or have yet to interject themselves into this lawsuit in any manner,
17  including not even submitting a declaration, such individuals have the right to not let
18  Defendant know the extent of their involvement in this lawsuit. However, a privilege log
19  would require that Plaintiff's counsel reveal exactly that, thereby waiving their privacy
20  rights and/or privileges without authorization to do so. Additionally, the privilege log
21  would also reveal work product, i.e. how often Plaintiff's counsel spoke with any specific
22  individual thereby implicating who Plaintiff's counsel thought may have been more
23  important to speak with or not, and when Plaintiff's counsel spoke with the individual,
24  thereby implying legal strategy.

25          c)      Defendant Seeks Documents from Plaintiff Which He Does not
26                  Possess and Are Not His to Produce

27  It must also be discussed that Defendant's RFP is not directed at these class
28  members "clients," but, rather, is directed at Plaintiff. While Plaintiff himself may be in

possession and/or control of his own communications with his attorneys, he is not in possession or control of the class members' communications with counsel. This is exactly why Plaintiff asserted the objections of calls for speculation and lacks foundation.

Whereas Plaintiff's attorneys ultimately engaged with such class members in discussions as attorneys and clients, not just as witnesses, such documents are not within Plaintiff's control or possession, nor are within his right to produce on behalf of third parties. Likewise, because these are not Plaintiff's privileged communications, but the class members', he does not own the privilege or the documents – the class members do – thus, he cannot produce such documents which would amount to a waiver of their privilege and/or privacy rights on their behalf.  See *CA Evidence Code* §953.

Accordingly, Defendant's RFP seeks such information from an improper source, requiring Plaintiff to provide privileged and private information he does not possess and, thus, requiring Plaintiff's attorneys, on behalf of Plaintiff, to waive a privilege and privacy right that are not his, but only the class members themselves', to waive.

d)      Defendant Seeks Protected Attorney Work-Product

It is undisputed that an attorney's work product is not discoverable. *See California Code of Civil Procedure* §2018.030 (It is the policy of California that attorneys should be prevented from "taking undue advantage of their adversary's industry and efforts."); and *Federal Rules of Civil Procedure*, Rule 26(b)(3). Here, Defendant seeks work product without demonstrating how, in any way, there is a substantial need for it or a less intrusive means of obtaining the information sought.

RFP No. 51 seeks all communications between clients and their attorneys. At the very least, there is no doubt that many, if not all of the communications, include much more than just "factual" summaries, but, rather, legal advice and/or legal strategy, all of which is clearly protected work product. *See Kintera Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003).  One must only look the e-mails that were revealed as part of Defendant's failed ex parte application between Plaintiff's counsel and class members who sought out legal advice, but did not ultimately retain said counsel, i.e. Mr. Castaneda

and Mr. Zmily and Mr. Martinez. In these e-mails, Plaintiff's counsel, under the belief that these class members intended to pursue their own claims and assist in the class action, advised these individuals to not "sign anything … without talking to [Plaintiff's counsel] or another attorney" and to provide "any and all e-mails reflecting reducing man hours/labor and/or telling you to cover cast member functions." [Kahn Decl., DKT 49-1, Exs. H & J] Such statements, alone, demonstrate how these communications to clients, which both individuals were at the time due to seeking legal advice and requesting legal representation, even though they hadn't retained counsel yet, contain protected work product in the form of legal advice and legal strategies.

These are only small and minor examples, thus, certainly, communications between clients and counsel after they had retained counsel would contain much more obvious and demonstrative work product. If Defendant merely sought unsigned declarations or summaries of class member experiences, while Plaintiff would argue that would still be undiscoverable work product, that would be one thing.  However, here, it seeks much more than that – <u>Defendant seeks every single communication which exists between Plaintiff's counsel and any class members, whether a client or not and whether retained or not, since six (6) months before Plaintiff's lawsuit was ever filed.</u> Consequently, there is no doubt that such communications will include protected work product, i.e. the legal impressions, strategies and/or advice of counsel that both counsel and their clients expected would remain private and confidential between them.

As Defendant admits, such opinion work product which consists of Plaintiff's attorneys' legal impressions and strategies may be discovered only in rare circumstances. *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificate Litig.*, 116 F.R.D. 297, 302 (C.D. Cal. 1987); and *Kintera*, *supra*, 219 F.R.D. at 507.   As Defendant also admits, it is it own burden in seeking Plaintiff's counsel's work product to show a "substantial need" and the "inability to secure a substantial equivalent by alternate means without undue hardship." *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005).  Other than, again, its wild speculation as part of its improper fishing expedition, Defendant has failed to provide any

evidence that the documents it seeks will not contain work product. Equally important, Defendant has failed to demonstrate any "substantial need" for the information or that, where such exists, it cannot be found through less intrusive means. *Id.*

Defendant has made it abundantly clear that the only reason it seeks such information is not because it is relevant to the actual claims or defenses in this case, but, rather, in order to continue to pursue its vindictive motion for disqualification. Given that such a purpose has no bearing or relevance as to the actual issues of this case, there is no "substantial need" for this information. In fact, <u>there is not a single authority in existence, nor has Defendant provided any, which states that a party has a "substantial need for" or may acquire that opposing attorneys' work product and/or privileged communications because it hopes to disqualify that opposing counsel and remove them from the case.</u>

In hopes of acquiring such work product, however, Defendant cites to *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 641(D. Colo. 2012) However, as a threshold matter, because, when it comes to privilege, pursuant to *Federal Rules of Civil Procedure*, Rule 501, requires that this Court apply California State law, *Roe* is inapplicable as a Colorado authority. However, still, Roe is easily distinguishable from the present circumstances.  First, *Roe* was a case where the Court had determined that the Defendant was trying to create an attorney-client relationship with 31 witnesses (not class members) for the purpose of preventing plaintiff's counsel from being able to talk to these fact witnesses. *Id.* at 634.  Here, there are over 125 class members, of which only 55 or so have retained Plaintiff's counsel. Second, the plaintiff in *Roe* who did not have any direct access to these witnesses, as the defendant's current and former employees. Id. at 635. Conversely, here, all of these individuals are class members, as Defendant's current or former employees, thus Defendant here had sole access to all of the class members for the first year and of this action before distributing the class list in September of 2015. Third and last, unlike the individuals in Roe who were merely witnesses and, thus, were unlikely to need any legal advice that would give rise to any privilege or work product, the individuals at issue here are class members, each of which have their own

wage & hour-based legal claims. Thus, it makes entire sense here that the class members who became Plaintiff's counsel's clients would engage in communications that sought out legal advice, impressions and/or opinions directly relevant to their own specific claims and/or circumstances.

Plaintiff has not attempted to muzzle any witnesses – in fact, more than 50% of the class is still unrepresented and can be freely spoken to by Defendant. Rather, Plaintiff's counsel has simply attempted to provide legal advice and assistance to those class members who sought out such with the understanding that such communications would remain private and privileged. These rights must be respected, which is why the Court must not order that the documents be produced.

Lastly, Defendant's request for a privilege is inappropriate  If required, a privilege log, here, would reveal work product by providing the very information sought (i.e. potentially the dates of communications, the subject matter of the communications, the individuals communicated with and, worse, the identities of  class members who spoke with Plaintiff's counsel under the assumption of anonymity). Not only would such reflect work product, but, more importantly, it would reveal privileged and private information (such as the identiti that Plaintiff's counsel, nor Plaintiff, is authorized to provide on behalf of these third party class members. Furthermore, the request in itself is a red herring and an attempt at an end around to the privilege and privacy objections. There is no doubt that every single document sought would reflect nothing but an attorney-client communication – Defendant's request asks for nothing else. Privilege logs are requested to determine whether or not the privilege objection is appropriate, but, here, the only documents sought are those which are undisputedly privileged given that the documents sought are specifically identified by Defendant's own RFP as attorney-client communications. There is no ambiguity or blurry line, which is why a privilege log would not be helpful here and, why, a privilege log is not necessary.

1

2

         e)      Defendant Seeks Private Materials Reflecting the Identities of Class Members Who Spoke with Plaintiff's Counsel and the Substance of Their Private Communications

3      While Defendant claims that Plaintiff waived a privacy objection by failing to use

4    the specific word "privacy," under California law, Defendant's position is incorrect.

5    Privacy rights cannot be waived by a failure to object; rather, they are only waived either

6    by an intentional disclosure of private information or by an express waiver providing

7    consent to release private information. *See Heda v. Superior Court*, 225 Cal. App. 3d 525,

8    530 (1990) (privacy rights are protected much in the same way as a privilege, i.e. that,

9    regardless if a privacy objection is asserted or not, they can only be waived if the

10    individual, without coercion, "has disclosed significant part of the communication or

11    consented to such disclosure…")

12      Furthermore, regardless of whether Plaintiff expressly objected to "privacy" or not,

13    a privacy objection is implicitly encompassed by an objection of attorney-client privilege.

14    *See Tien, supra,* 139 Cal. App. 4th at 541 ("[c]lients routinely exercise their right to

15    consult with counsel, seeking to obtain advice on a host of matters that they reasonably

16    expect to remain private."). In communicating with counsel, the attorney-client privilege

17    inherently stands for the proposition that a client, whether ultimately retaining legal

18    representation or not, has the right to confide in and consult with an attorney while

19    expecting that such communications remain confidential and private. Id.; and *Hooser,*

20    *supra,* 84 Cal.App.4th at pages 1005–1006 ("every person [has the right] to freely confer

21    with and confide in his attorney in an atmosphere of trust and serenity … .")

22      The substance of each class members' communications, including Plaintiff's,

23    undoubtedly fall within the constitutionally protected zone of privacy. *Id.*  Likewise, each

24    class member has a fundamental right of privacy as to whether or not they have sought

25    out legal advice, related to this matter or any other. *Tien, supra,* 139 Cal. App. 4th at 541

26    ("The identity of an attorney's clients is sensitive personal information that implicates the

27    clients' rights of privacy") Accordingly, for Defendant to overcome such privacy rights,

28    the burden imposed on Defendant under California law is quite high. Because Defendant

seeks to discover documents subject to the constitutional right of privacy, it bears the burden of establishing a compelling need for this discovery.  *See Lantz v. Superior Court,* 28 Cal. App. 4th 1839, 1853 (1994). Defendant's burden is a significant one that is not easily overcome. Defendant must establish that each document or piece of information sought is directly relevant to the action and essential to its fair resolution.  *Id.* at 1854; *See, also, Britt v. Superior Court*  20 Cal. 3d 844, 859 (1978).

Communications between Plaintiff's counsel and the class members regarding the circumstances by which they retained counsel, communications in which they sought and/or obtained legal advice and/or where they provided information under the umbrella of a privilege have absolutely no relevance, no less the requisite "direct relevance," to the issues of this litigation, i.e. the various California *Labor Code* provisions which Defendant has allegedly violated as to Plaintiff and/or the entire class and/or Defendant's defenses to the same. This is especially true in the present matter because Defendant is clearly engaged in a fishing expedition meant to obtain information which does not exist. Defendant seeks to find information supporting its paranoid theory that Plaintiff's counsel somehow convinced 55 class members to lie about Defendant's unlawful conduct. Where the right of privacy is at stake, such as in this instance, said right cannot be violated by a mere speculation as to the possibility of discovering relevant information. *See Snibbe v. Superior Court* 224 Cal. App. 4th 184, 190 & 196 (2014) (the discovery of private information is only permitted if directly relevant to the litigation and is prohibited when such would constitute a "fishing expedition")*; Mendez v. Superior Court* 206 Cal. App. 3d 557, 570-571 (1988) (mere conjecture about what might be found is an insufficient basis for discovery of matters protected by the constitutional right to privacy); *Huelter v. Superior Court* 87 Cal. App. 3d 544, 548-549 (1978) ("mere speculation…does not justify the discovery of privileged matter."); and *Grey v. Superior Court* 63 Cal. App. 3d 698, 703-704 (1976) (speculation alone is not sufficient to warrant the disclosure of private information).Consequently, Defendant's discovery requests seek private information which cannot, and must not, be provided.

1   As separate basis, these individuals also maintain a privacy right to not have their

2   identities disclosed to Defendant who, for many, is their current employer. Defendant

3   attempts to distinguish *Tien v. Superior Court*, 139 Cal. App. 4th 528, 541 (2006), by

4   arguing that, unlike in *Tien*, many of the class members Plaintiff's counsel has spoken to

5   were already revealed to Defendant as being represented by Plaintiff. However, in this

6   regard as well, Defendant's RFP does nothing to distinguish between individuals who are

7   already represented versus individuals who are not represented. As such, Defendant's

8   RFP, and any requested privilege log for that matter, would require that Plaintiff identify

9   a number of individuals who sought to assist and/or communicate with Plaintiff's

10  counsel, and/or continued to do so, under the assumption that their identities would never

11  be revealed to their current employer who might retaliate against them for doing so.

12  Even where an individual has not "retained" my firm, such individual class

13  members still have a privacy expectation in regards to whether or not they sought legal

14  advice, including any implications which correlate to that decision. Defendant does not

15  have the right to know whether or not that individual class member has been in contact

16  with my firm, especially in regards to current employees in the class action setting:

17
18  **"[T]he degree to which the identity of a client entails sensitive**
    **personal information may vary depending on the context. One of**
19  **the more sensitive contexts is the employment context. Employees**
    **may be reluctant to engage in any act their employer may perceive**
20  **as adversarial for fear of retaliation. Therefore, if employees feel**
    **their employer will be informed whenever they contact an**
21  **attorney suing the employer, many would be deterred from**
22  **exercising their right to consult counsel."** [Bold Added]

23  *Tien*, 139 Cal. App. 4th at 541

24  For all of these reasons discussed above, the Court must not order that the

25  documents be produced as such would violate the privacy rights of class members who

26  have retained counsel and those who have not, in regards to the substance of

27  communications and/or the identities of such individuals who expected to remain

28  anonymous. Defendant has simply not demonstrated, and cannot demonstrate, that such

materials are directly relevant to the issues of this litigation and, thus, has failed to show that there is a compelling need for such materials that outweighs said privacy rights.

    f)  Defendant's Request has No Relevance to the Claims of This Litigation

  Under *Federal Rules of Civil Procedure*, Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As such, unlike the rules of California discovery in state Court, Federal law does not permit for discovery simply because it may "lead" to relevant evidence.

  While there is no question that information regarding what class members did in terms of duties or hours worked is relevant to the claims of this action, there is absolutely nothing relevant, nor which would even lead to relevant evidence, about communications regarding legal representation. Indeed, Defendant has made it abundantly clear that the reason it seeks such discovery is to pursue its motion for disqualification, while, of course, trying to mask such intent under other disingenuous argument. Again, there is no case law, nor had Defendant provided a single legal authority, which stands for the proposition that discovery meant for the purpose of pursuing a proposed motion for disqualification of a party's opposing counsel falls with the scope of permissible relevant discovery as contemplated by Rule 26(b). [7]

---

[7] Defendant also argues that such evidence may be relevant to class certification in regards to whether Plaintiff's counsel is competent. However, given that class certification has come and gone, such an argument is no longer applicable. Defendant could have pursued its motion for this purpose prior to class certification, but failed to. Consequently, this argument to reflects no more than Defendant's desire for information in hopes that it will somehow support its frivolous motion for disqualification.

g)  **Conclusion**

Defendant has done nothing to show or demonstrate as to how Plaintiff's objections can be overcome nor why Defendant is legally entitled to such private, privileged and irrelevant materials. Accordingly, Defendant's request must be denied.

**B.  CEC's Request for Production No. 52.**

CEC's Request for Production No. 52

All DOCUMENTS provided or received by YOU or YOUR attorney(s) to-or from any PUTATIVE CLASS MEMBER.

Plaintiff's Response to Request for Request for Production No. 52

Objection.  This request is overly broad, vague and ambiguous.  This request calls for information in violation of the attorney-client privilege and the attorney work product doctrine.  This request calls for speculation, lacks foundation and calls for a legal conclusion.

1.  CEC's Contentions

This request is not intended to seek communications to or from general managers or retainer agreements, which are instead covered by Request No. 51, above, or No. 54, below.  Rather, this request is intended to seek pre-existing documents that general managers may have given to or received from Plaintiff's counsel.  There is nothing vague or ambiguous in it.  Such documents could include, for example, Company policies, records, files, and emails.

CEC knows that one or more general managers did provide some such documents. Plaintiff submitted a series of emails—sent from a CEC district manager to one of his declarants—in support of his class certification motion.  Dkt. 52-1 (Trush Decl.), at ¶ 6, Ex. 88.  Further, in an email to Mr. Zmily, Plaintiff's counsel asked him to "send/mail me any and all e-mails/documents you have reflecting reducing man hours/labor and/or telling you to cover for cast member duties/functions."  Petersen Decl., ¶ 2, Ex. A-3 and A-4 (Zmily Decl. and Ex. A thereto), at ¶ 6 and h. 14.  CEC suspects that counsel may have asked other general managers for documents.

Plaintiff did not object to the relevance of these documents. And given the restrictions on the use of the class list, there would be no reason for Plaintiff's counsel and general managers to be exchanging documents that they do not believe are relevant to the case. Nor could Plaintiff dispute the relevance of documents requested from general managers, because in requesting such documents from Mr. Zmily his own counsel notes that "[t]hey would be very helpful to the case." Petersen Decl., ¶ 2, Ex. A-3 and A-4 (Zmily Decl. and Ex. A thereto), at ¶ 6 and h. 14.

Further, no privilege, work product, or privacy objections would apply to these documents, as the documents sought are ones that exist independent of general managers' communications with Plaintiff's counsel or counsel's representation of general managers. Indeed, many of the records sought could be CEC's own records that general managers turned over to Plaintiff's counsel. Further, if Plaintiff's counsel chose to disclose his own work product he created to general managers, then any protection for that material was waived. *See, e.g., Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009) (waiver occurs when party "shows disregard" for work-product protection by making the information public).

### 2. Plaintiff's Contentions

#### a) Defendant Seeks to Invade the Attorney-Client Privilege

Defendant contends that it is not seeking documents which reflect communications between attorneys and their clients. However, upon a cursory review, that is not how RFP No. 52 reads. [8] <u>RFP No. 52 makes no distinction between documents that are privileged</u>

---

[8] Moreover, Plaintiff has already made it clear to Defendant in prior communications that Plaintiff has already produced every single document in his possession that has anything to do with the substantive claims of this case and/or Defendant's defenses. As such, to the extent that Defendant seeks to pursue its motion only to obtain directly relevant documents, i.e. those related to Plaintiff's causes of action and/or claims, there is no need for Defendant to do so. However, it is clear that Defendant is seeking much more than that and seeks to obtain privileged documents and work product, which is why it continues its pursuit.

1    versus documents which reflect substantive information related to the claims of this case.

2    RFP No. 52 makes no distinction between pre- or post-retainer communications.

3    Likewise, RFP No. 52 makes no distinction between individuals who retained Plaintiff's

4    counsel and individuals who did not.

5         Rather, **RFP No. 52 asks for *every single document* exchanged between the**

6    **attorneys and any class member at any time**. Therefore, it is also clear that this request

7    was specifically meant to acquire documents between Plaintiff himself and his own legal

8    representation. Lastly, because this request implicates a privilege, it is irrelevant as to

9    whether such documents were exchanged before or after an individual officially retained

10   counsel. Any documents which reflect communications made in seeking potential legal

11   representation or simply seeking legal advice from an attorney are still privileged and

12   protected under California law.

13        Under *Federal Rules of Evidence,* Rule 501, in any civil case, "state law governs

14   privilege regarding a claim or defense which state law supplies the rule of decision."

15   Therefore, as this litigation relies on California law, so must any arguments as to the

16   attorney-client privilege and/or privileged attorney work product.  Under California law,

17   the privilege is not just created when a client signs a retainer agreement. Rather, a client

18   becomes a "client" when an individual either seeks to retain an attorney or seeks legal

19   advice from an attorney. Specifically, under *CA Evidence Code* §951, a **"'client' means a**

20   **person who... consults a lawyer for the purpose of retaining the lawyer or securing**

21   **legal service or advice from him in his...""** [Bold Added] *See Hooser v. Superior Court*

22   (2000) 84 Cal. App. 4th 997, 1003. ("The attorney-client privilege applies to all

23   confidential communications made to an attorney during preliminary discussions of the

24   prospective professional employment, as well as those made during the course of any

25   professional relationship resulting from such discussions.").

26        Per California *Evidence Code* § 952, all communications between a "client," which

27   would include someone who may have only sought legal advice without even retaining

28   the attorney, and the attorney regarding said legal issues, are privileged:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"'**confidential communication[s] between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and <u>includes a legal opinion formed and the advice given by the lawyer in the course of that relationship</u>.**" [Bold and Underline Added]

At all times, <u>every document in Plaintiff's counsel's possession that reflects a communication with a class member reflects a communication made in seeking legal advice, if not outright legal representation and/or after having retained counsel</u>. The mere fact that some class members sought legal advice without ultimately retaining my firm provides absolutely no distinction regarding the application of the attorney-client privilege. *See Tien, supra,* 139 Cal. App. 4th at 537 ("[F]or purposes of the attorney-client privilege analysis, there is no basis to distinguish between class members who retained plaintiffs' counsel and those who did not."). Additionally, there are many individuals - such as Mr. Zmily and Mr. Castaneda - who sought out Plaintiff's counsel's legal representation but ultimately decided not to for fear that if they actively participated in the class action, Defendant would retaliate against them. As such, simply that some class members sought legal representation but did not follow through by ultimately retaining counsel does not mean those class members did not initially seek out legal representation and/or seek out legal advice during their communications. No matter, pursuant to the authorities above, whether they sought out legal representation or only legal advice, the privilege still applies and protects these communications all the same.

Consequently, despite Defendant's arguments to the contrary, any communications with those class members Plaintiff's counsel communicated with, regardless of whether they ultimately retained counsel or not, are confidential and protected by the attorney-

1  client privilege. Therefore, Defendant's RFP No. 52, which seek any and all documents

2  exchanged between the class members, inherently including "clients," and counsel

3  implicitly demands that privileged communications be produced. Such a request is

4  improper because it seeks information protected by the attorney-client privilege.  This

5  makes no mention of the fact, of course, that, given the over breadth of Defendant's RFP,

6  if  it was complied with it would require that Plaintiff's own attorneys turn over

7  communications between them and Plaintiff himself, as he is also a putative class

8  member per Defendant's definition contained within its RFP.

9        Because a substantial portion of these documents fall under the attorney-client

10  privilege pursuant to California law, the only means by which such information can be

11  disclosed is by a waiver of the individual who possesses the information. In other words,

12  because Plaintiff has established that the documents in question are privileged, under

13  California law, the burden shifts to Defendant to disprove the foundational facts or to

14  establish a waiver. *See CA Evidence Code* § 405; *HLC Properties, Ltd., supra,* 35 Cal. 4th

15  at 59-60; *San Diego Professional Ass'n, supra,* 58 Cal. 2d at 199; *Roman Catholic*

16  *Archbishop of Los Angeles, supra,* 131 Cal. App. 4th at 442; and *OXY Resources, Calif.*

17  *LLC., supra,* 115 Cal. App. 4th at 894. The means by which privilege may be waived is

18  controlled by statute. *See CA Evidence Code* § 912; and *Manela, supra,* 177 Cal. App. 4th

19  at 1147-1148.  Moreover, any waiver is narrowly defined and the information required to

20  be disclosed must fit strictly within the confines of the waiver. *See Transamerica Title*

21  *Ins. Co., supra,* 188 Cal. App. 3d at 1052.

22        With the present dispute, while Defendant can speculate all it wants about what the

23  available documents contain as part of its improper fishing expedition, Defendant has not

24  provided any evidence which rebuts any presumption that the communications sought

25  are, in fact, privileged and/or protected work product. Moreover, Defendant has not

26  provided any legal argument as to how there has been any waiver of said privilege, which

27  would permit the Court to force Plaintiff's counsel to turn over documents reflecting

28

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2

1  communications with their clients. For these basic reasons, the Court must not require
2  that the documents sought be produced.

3      Lastly, Defendant would require that Plaintiff produce a privilege log, such a
4  request is inappropriate here and would only serve as an end around to acquire the same
5  information that Defendant is not entitled to. Specifically, as discussed in more detail
6  below, a privilege log would require that Plaintiff identity the names of class members
7  who sought out legal advice and/or legal representation, when they did and if they ever
8  signed a retainer, thereby revealing not just privileged information, but private
9  information. Whereas many of Plaintiff's counsel's clients are still employed by
10 Defendant and/or have yet to interject themselves into this lawsuit in any manner,
11 including not even submitting a declaration, such individuals have the right to not let
12 Defendant know the extent of their involvement in this lawsuit. However, a privilege log
13 would require that Plaintiff's counsel reveal exactly that, thereby waiving their privacy
14 rights and/or privileges without authorization to do so. Additionally, the privilege log
15 would also reveal work product, i.e. how often Plaintiff's counsel spoke with any specific
16 individual thereby implicating who Plaintiff's counsel thought may have been more
17 important to speak with or not, and when Plaintiff's counsel spoke with the individual,
18 thereby implying legal strategy.

        b)    Defendant Seeks Documents from Plaintiff Which He Does not
              Possess and Are Not His to Produce

21     It must also be discussed that Defendant's RFP is not directed at these class
22 members "clients," but, rather, is directed at Plaintiff. While Plaintiff himself may be in
23 possession and/or control of his documents provided to his attorneys, he is not in
24 possession or control of the class members' documents, which were not produced by
25 them with the intention of using them for the class action but for their own anticipated
26 lawsuits. This is exactly why Plaintiff asserted the objections of calls for speculation and
27 lacks foundation.

28

1   Whereas Plaintiff's attorneys ultimately engaged with such class members in

2   discussions as attorneys and clients, not just as witnesses, such documents are not within

3   Plaintiff's control or possession, nor are within his right to produce on behalf of third

4   parties. Likewise, because the documents do not reflect Plaintiff's privileged

5   communications or even his own documents, but those belonging to the class member

6   clients, he does not own the privilege or the documents – the class members do – thus, he

7   cannot produce such documents which would amount to a waiver of their privilege and/or

8   privacy rights on their behalf.  See *CA Evidence Code* §953.

9   Accordingly, Defendant's RFP seeks such information from an improper source,

10  requiring Plaintiff to provide privileged and private information he does not possess and,

11  thus, requiring Plaintiff's attorneys, on behalf of Plaintiff, to waive a privilege and

12  privacy right that are not his, but only the class members themselves', to waive.

c)      Defendant Seeks Protected Attorney Work-Product

13
14  It is undisputed that an attorney's work product is not discoverable. *See California*

15  *Code of Civil Procedure* §2018.030 (It is the policy of California that attorneys should be

16  prevented from "taking undue advantage of their adversary's industry and efforts."); and

17  *Federal Rules of Civil Procedure*, Rule 26(b)(3). Here, Defendant seeks work product

18  without demonstrating how, in any way, there is a substantial need for it or a less

19  intrusive means of obtaining the information sought.

20  RFP No. 52 seeks all documents exchanged between clients and their attorneys. At

21  the very least, there is no doubt that many, if not all of the documents, include much more

22  than just "factual" summaries, but, rather, legal advice and/or legal strategy, all of which

23  is clearly protected work product. *See Kintera Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507

24  (S.D. Cal. 2003).  One must only look the e-mails that were revealed as part of

25  Defendant's failed ex parte application between Plaintiff's counsel and class members

26  who sought out legal advice, but did not ultimately retain said counsel, i.e. Mr. Castaneda

27  and Mr. Zmily and Mr. Martinez. In these e-mails, Plaintiff's counsel, under the belief

28  that these class members intended to pursue their own claims and assist in the class

1   action, advised these individuals to not "sign anything … without talking to [Plaintiff's

2   counsel] or another attorney" and to provide "any and all e-mails reflecting reducing man

3   hours/labor and/or telling you to cover cast member functions." [Kahn Decl., DKT 49-1,

4   Exs. H & J] Such statements, alone, demonstrate how these communications to clients,

5   which both individuals were at the time due to seeking legal advice and requesting legal

6   representation, even though they hadn't retained counsel yet, contain protected work

7   product in the form of legal advice and legal strategies.

8          These are only small and minor examples, thus, certainly, communications

9   between clients and counsel after they had retained counsel would contain much more

10  obvious and demonstrative work product. If Defendant merely sought unsigned

11  declarations or summaries of class member experiences, while Plaintiff would argue that

12  would still be undiscoverable work product, that would be one thing.  However, here, it

13  seeks much more than that – <u>Defendant seeks every single document exchanged between

14  Plaintiff's counsel and any class members, whether a client or not and whether retained or

15  not</u>. Consequently, there is no doubt that such communications will include protected

16  work product, i.e. the legal impressions, strategies and/or advice of counsel that both

17  counsel and their clients expected would remain private and confidential between them.

18         As Defendant admits, such opinion work product which consists of Plaintiff's

19  attorneys' legal impressions and strategies may be discovered only in rare circumstances.

20  *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificate Litig.*, 116 F.R.D. at 302; and

21  *Kintera*, *supra*, 219 F.R.D. at 507.   As Defendant also admits, it is it own burden in

22  seeking Plaintiff's counsel's work product to show a "substantial need" and the "inability

23  to secure a substantial equivalent by alternate means without undue hardship."  *Green*,

24  *supra*, 226 F.R.D. at  652.  Other than, again, its wild speculation as part of its improper

25  fishing expedition, Defendant has failed to provide any evidence that the documents it

26  seeks will not contain work product. Equally important, Defendant has failed to

27  demonstrate any "substantial need" for the information or that, where such exists, it

28  cannot be found through less intrusive means. *Id.*

Defendant has made it abundantly clear that the only reason it seeks such information is not because it is relevant to the actual claims or defenses in this case, but, rather, in order to continue to pursue its vindictive motion for disqualification. Given that such a purpose has no bearing or relevance as to the actual issues of this case, there is no "substantial need" for this information. In fact, there is not a single authority in existence, nor has Defendant provided any, which states that a party has a "substantial need for" or may acquire that opposing attorneys' work product and/or privileged communications because it hopes to disqualify that opposing counsel and remove them from the case. In hopes of acquiring such work product, however, Defendant cites to *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 641(D. Colo. 2012) However, as a threshold matter, because, when it comes to privilege, pursuant to *Federal Rules of Civil Procedure*, Rule 501, requires that this Court apply California State law, *Roe* is inapplicable as a Colorado authority. However, still, Roe is easily distinguishable from the present circumstances.  First, *Roe* was a case where the Court had determined that the Defendant was trying to create an attorney-client relationship with 31 witnesses (not class members) for the purpose of preventing plaintiff's counsel from being able to talk to these fact witnesses. *Id.* at 634.  Here, there are over 125 class members, of which only 55 or so have retained Plaintiff's counsel. Second, the plaintiff in *Roe* who did not have any direct access to these witnesses, as the defendant's current and former employees. Id. at 635. Conversely, here, all of these individuals are class members, as Defendant's current or former employees, thus Defendant here had sole access to all of the class members for the first year and of this action before distributing the class list in September of 2015. Third and last, unlike the individuals in Roe who were merely witnesses and, thus, were unlikely to need any legal advice that would give rise to any privilege or work product, the individuals at issue here are class members, each of which have their own wage & hour-based legal claims. Thus, it makes entire sense here that the class members who became Plaintiff's counsel's clients would engage in communications that sought

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2

1    out legal advice, impressions and/or opinions directly relevant to their own specific

2    claims and/or circumstances.

3        Plaintiff has not attempted to muzzle any witnesses – in fact, more than 50% of the

4    class is still unrepresented and can be freely spoken to by Defendant. Rather, Plaintiff's

5    counsel has simply attempted to provide legal advice and assistance to those class

6    members who sought out such with the understanding that such communications would

7    remain private and privileged. These rights must be respected, which is why the Court

8    must not order that the documents be produced.

9        Lastly, Defendant's request for a privilege is inappropriate  If required, a privilege

10    log, here, would reveal work product by providing the very information sought (i.e.

11    potentially the dates of communications, the subject matter of the communications, the

12    individuals communicated with and, worse, the identities of class members who spoke

13    with Plaintiff's counsel under the assumption of anonymity). Not only would such reflect

14    work product, but, more importantly, it would reveal privileged and private information

15    (such as the identities that Plaintiff's counsel, nor Plaintiff, are authorized to provide on

16    behalf of these third party class members. Furthermore, the request in itself is a red

17    herring and an attempt at an end around to the privilege and privacy objections. There is

18    no doubt that every single document sought would reflect nothing but an attorney-client

19    communication – Defendant's request asks for nothing else. Privilege logs are requested

20    to determine whether or not the privilege objection is appropriate, but, here, the only

21    documents sought are those which are undisputedly privileged given that the documents

22    sought are specifically identified by Defendant's own RFP as attorney-client

23    communications. There is no ambiguity or blurry line, which is why a privilege log

24    would not be helpful here and, why, a privilege log is not necessary.

25           d)     Defendant Seeks Private Materials Reflecting the Identities of
26                  Class Members Who Spoke with Plaintiff's Counsel and the
                 Substance of Their Private Communications

27        While Defendant claims that Plaintiff waived a privacy objection by failing to use

28    the specific word "privacy," under California law, Defendant's position is incorrect.

Privacy rights cannot be waived by a failure to object; rather, they are only waived either by an intentional disclosure of private information or by an express waiver providing consent to release private information. *See Heda*, *supra*, 225 Cal. App. 3d at 530 (privacy rights are protected much in the same way as a privilege, i.e. that, regardless if a privacy objection is asserted or not, they can only be waived if the individual, without coercion, "has disclosed significant part of the communication or consented to such disclosure…")

Furthermore, regardless of whether Plaintiff expressly objected to "privacy" or not, a privacy objection is implicitly encompassed by an objection of attorney-client privilege. *See Tien, supra,* 139 Cal. App. 4th at 541 ("[c]lients routinely exercise their right to consult with counsel, seeking to obtain advice on a host of matters that they reasonably expect to remain private."). In communicating with counsel, the attorney-client privilege inherently stands for the proposition that a client, whether ultimately retaining legal representation or not, has the right to confide in and consult with an attorney while expecting that such communications remain confidential and private. Id.; and *Hooser, supra,* 84 Cal.App.4th at pages 1005–1006 ("every person [has the right] to freely confer with and confide in his attorney in an atmosphere of trust and serenity … .")

The substance of each class members' communications, including Plaintiff's, which these documents will reflect, undoubtedly fall within the constitutionally protected zone of privacy. *Id.* Likewise, each class member has a fundamental right of privacy as to whether or not they have sought out legal advice, related to this matter or any other. *Tien, supra,* 139 Cal. App. 4th at 541 ("The identity of an attorney's clients is sensitive personal information that implicates the clients' rights of privacy"). Accordingly, for Defendant to overcome such privacy rights, the burden imposed on Defendant under California law is quite high. Because Defendant seeks to discover documents subject to the constitutional right of privacy, it bears the burden of establishing a compelling need for this discovery. *See Lantz*, *supra*, 28 Cal. App. 4th at 1853. Defendant's burden is a significant one that is not easily overcome. Defendant must establish that each document

1  or piece of information sought is directly relevant to the action and essential to its fair
2  resolution.  *Id*. at 1854; *see, also, Britt, supra,* 20 Cal. 3d at 859.

3        Communications between Plaintiff's counsel and the class members regarding the
4  circumstances by which they retained counsel, communications in which they sought
5  and/or obtained legal advice and/or where they provided information under the umbrella
6  of a privilege have absolutely no relevance, no less the requisite "direct relevance," to the
7  issues of this litigation, i.e. the various California *Labor Code* provisions which
8  Defendant has allegedly violated as to Plaintiff and/or the entire class and/or Defendant's
9  defenses to the same. This is especially true in the present matter because Defendant is
10 clearly engaged in a fishing expedition meant to obtain information which does not exist.
11 Defendant seeks to find information supporting its paranoid theory that Plaintiff's
12 counsel somehow convinced 55 class members to lie about Defendant's unlawful
13 conduct. Where the right of privacy is at stake, such as in this instance, said right cannot
14 be violated by a mere speculation as to the possibility of discovering relevant
15 information. *See Snibbe*, *supra*, 224 Cal. App. 4th at 190 & 196 (the discovery of private
16 information is only permitted if directly relevant to the litigation and is prohibited when
17 such would constitute a "fishing expedition")*; Mendez*, *supra,* 206 Cal. App. 3d at 570-
18 571 (mere conjecture about what might be found is an insufficient basis for discovery of
19 matters protected by the constitutional right to privacy); *Huelter*, *supra*, 87 Cal. App. 3d
20 at 548-549 ("mere speculation…does not justify the discovery of privileged matter.");
21 and *Grey*, *supra*, 63 Cal. App. 3d  at 703-704 (speculation alone is not sufficient to
22 warrant the disclosure of private information).Consequently, Defendant's discovery
23 requests seek private information which cannot, and must not, be provided.

24        As separate basis, these individuals also maintain a privacy right to not have their
25 identities disclosed to Defendant who, for many, is their current employer. Defendant
26 attempts to distinguish *Tien v. Superior Court* , 139 Cal. App. 4th 528*,* 541 (2006), by
27 arguing that, unlike in *Tien*, many of the class members Plaintiff's counsel has spoken to
28 were already revealed to Defendant as being represented by Plaintiff. However, in this

regard as well, Defendant's RFP does nothing to distinguish between individuals who are already represented versus individuals who are not represented. As such, Defendant's RFP, and any requested privilege log for that matter, would require that Plaintiff identify a number of individuals who sought to assist and/or communicate with Plaintiff's counsel, and/or continued to do so, under the assumption that their identities would never be revealed to their current employer who might retaliate against them for doing so.

Even where an individual has not "retained" my firm, such individual class members still have a privacy expectation in regards to whether or not they sought legal advice, including any implications which correlate to that decision. Defendant does not have the right to know whether or not that individual class member has been in contact with my firm, especially in regards to current employees in the class action setting:

> **"[T]he degree to which the identity of a client entails sensitive personal information may vary depending on the context. One of the more sensitive contexts is the employment context. Employees may be reluctant to engage in any act their employer may perceive as adversarial for fear of retaliation. Therefore, if employees feel their employer will be informed whenever they contact an attorney suing the employer, many would be deterred from exercising their right to consult counsel."** [Bold Added]

*Tien*, 139 Cal. App. 4th at 541

For all of these reasons discussed above, the Court must not order that the documents be produced as such would violate the privacy rights of class members who have retained counsel and those who have not, in regards to the substance of communications and/or the identities of such individuals who expected to remain anonymous. Defendant has simply not demonstrated, and cannot demonstrate, that such materials are directly relevant to the issues of this litigation and, thus, has failed to show that there is a compelling need for such materials that outweighs said privacy rights.

1

       e)    Defendant's Request has No Relevance to the Claims of This Litigation

2

3      Under *Federal Rules of Civil Procedure*, Rule 26(b), "[p]arties may obtain

4 discovery regarding any nonprivileged matter that is relevant to any party's claim or

5 defense and proportional to the needs of the case, considering the importance of the

6 issues at stake in the action, the amount in controversy, the parties' relative access to

7 relevant information, the parties' resources, the importance of the discovery in resolving

8 the issues, and whether the burden or expense of the proposed discovery outweighs its

9 likely benefit." As such, unlike the rules of California discovery in state Court, Federal

10 law does not permit for discovery simply because it may "lead" to relevant evidence.

11      While there is no question that information regarding what class members did in

12 terms of duties or hours worked is relevant to the claims of this action, there is absolutely

13 nothing relevant, nor which would even lead to relevant evidence, about communications

14 regarding legal representation. Indeed, Defendant has made it abundantly clear that the

15 reason it seeks such discovery is to pursue its motion for disqualification, while, of

16 course, trying to mask such intent under other disingenuous argument. Again, there is no

17 case law, nor had Defendant provided a single legal authority, which stands for the

18 proposition that discovery meant for the purpose of pursuing a proposed motion for

19 disqualification of a party's opposing counsel falls with the scope of permissible relevant

20 discovery as contemplated by Rule 26(b). [9]

21

22

23

24

---

25    [9]   Defendant also argues that such evidence may be relevant to class certification in regards to whether Plaintiff's counsel is competent. However, given that class

26 certification has come and gone, such an argument is no longer applicable. Defendant could have pursued its motion for this purpose prior to class certification, but failed to.

27 Consequently, this argument to reflects no more than Defendant's desire for information in hopes that it will somehow support its frivolous motion for disqualification.

28

f)     Conclusion

Defendant has done nothing to show or demonstrate as to how Plaintiff's objections can be overcome nor why Defendant is legally entitled to such private, privileged and irrelevant materials. Accordingly, Defendant's request must be denied.

**C.     CEC's Request for Production No. 54.**

CEC's Request for Production No. 54

Copies of all retainer agreements, whether signed or unsigned, that PLAINTIFF or any of his attorneys sent to or received from any PUTATIVE CLASS MEMBER.

Plaintiff's Response to Request for Production No. 54

Objection.  This request is overly broad, vague and ambiguous.  This request calls for information in violation of the attorney-client privilege and the attorney work product doctrine.  This request calls for speculation, lacks foundation and calls for a legal conclusion.  This request seeks information in violation of third parties' rights to privacy as provided to them by both the United States and California Constitutions.  This request seeks irrelevant information and/or information which is not reasonably calculated to lead the discovery of relevant and/or admissible evidence.

1.     CEC's Contentions

This request asked for copies of signed or unsigned retainer agreements.  There is nothing vague, ambiguous, or speculative in it.  The purpose of this request is to help determine if and when the attorney-client privilege may attach to communications between Plaintiff's counsel and general manager, and also whether any solicitation may have occurred.  Although Plaintiff's counsel might contend that the attorney-client privilege extends back further then the date on which the clients signed retainer agreements, the date on which they signed is still relevant in determining when the privilege might apply.

CEC has agreed that signed retainers need not be produced, if they are identified on a privilege log indicating who signed them and when.  Nor is CEC now seeking unsigned copies of those same retainers.  This concession sufficiently addresses any

privilege or work product concerns.  There are no privacy concerns, because the identity of general managers who retained Plaintiff's counsel has already been disclosed.  *Hooser*, 84 Cal. App. 4th at 1006.

Retainer agreements sent to general managers who did not sign them should be produced, because no attorney-client relationship formed, and the unsigned retainer is not a privileged communication.  At a minimum, if Plaintiff contends these unsigned retainer agreements are privileged, they need be identified on a privilege log.

To the extent Plaintiff's counsel used any different forms of retainer agreement than the one CEC already has (which was sent to Mr. Zmily), Plaintiff should produce exemplars of those different forms.

2.   Plaintiff's Contentions

a)   Defendant Seeks to Invade the Attorney-Client Privilege

A retainer agreement reflects terms and conditions discussed between a client and his attorney, thus seeks attorney-client communications, i.e. information exchanged between an attorney and his client. Appearing to resign itself to the fact it cannot acquire copies of said retainer agreement, Defendant concedes that it now does not want such retainer agreement, but merely the privilege log that would show when the agreements were signed and by who. [10]

Defendant's request for a privilege log is inappropriate.  If required, a privilege log, here, it would necessarily reveal the privileged information sought (i.e. potentially the dates of the retainers, the individuals who retained counsel, why they might have retained counsel, corresponding with the date they did, and, worse, the identities of class members who have retained counsel but have yet to authorize counsel to let Defendant know). Such information is still privileged in so far that Defendant does not have the right to know of clients who have retained Plaintiff's counsel, but which have not yet

---

[10]   It seems evident that Defendant has served this request for an improper purpose, not to actually acquire the documents, but to force Plaintiff to provide a privilege log.

been revealed. Likewise, Defendant does not have the right to know how long the individual has been involved in the case, especially given that some of the individuals are current employees and may become greater targets of retaliation by Defendant for their extended involvement in assisting this litigation. *See Hooser, supra,* 84 Cal. App. 4th at 1003. ("The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions.").

Because these documents fall under the attorney-client privilege pursuant to California law, the only means by which such information can be disclosed is by a waiver of the individual who possesses the information. In other words, because Plaintiff has established that the documents in question are privileged, under California law, the burden shifts to Defendant to disprove the foundational facts or to establish a waiver. *See CA Evidence Code* § 405; *HLC Properties, Ltd., supra,* 35 Cal. 4th at 59-60; *San Diego Professional Ass'n, supra,* 58 Cal. 2d at 199; *Roman Catholic Archbishop of Los Angeles, supra,* 131 Cal. App. 4th at 442; and *OXY Resources, Calif. LLC., supra,* 115 Cal. App. 4th at 894. The means by which privilege may be waived is controlled by statute. *See CA Evidence Code* § 912; and *Manela, supra,* 177 Cal. App. 4th at 1147-1148. Moreover, any waiver is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver. *See Transamerica Title Ins. Co., supra,* 188 Cal. App. 3d at 1052. Defendant has not provided any legal argument as to how there has been any waiver of said privilege, which would permit the Court to force Plaintiff's counsel to turn over documents reflecting communications with their clients. For this basic reason, the Court must not require that the documents sought be produced.

        b)    **Defendant Seeks Documents from Plaintiff Which He Does not Possess and Are Not His to Produce**

It must also be discussed that Defendant's RFP is not directed at these class members "clients," but, rather, is directed at Plaintiff. While Plaintiff himself may be in

possession and/or control of his own retainer agreement, he is not in possession or control of the class members' retainer agreements. This is exactly why Plaintiff asserted the objections of calls for speculation and lacks foundation. If Defendant wants these documents, it would have to subpoena such information directly from these individuals through document requests or depositions.

Whereas Plaintiff's attorneys ultimately may have been retained by such class members as their individual legal representation, such documents are not within Plaintiff's control or possession, nor are within his right to produce on behalf of these third parties. Because the retainer is not Plaintiff's, but that of the class members clients, he does not own the privilege or the documents – the class members do – thus, he cannot produce such documents which would amount to a waiver of their privilege and/or privacy rights on their behalf.  See *CA Evidence Code* §953.

Accordingly, Defendant's RFP seeks such information from an improper source, requiring Plaintiff to provide privileged and private information he does not possess and, thus, requiring Plaintiff's attorneys, on behalf of Plaintiff, to waive a privilege and privacy right that are not his, but only the class members themselves', right to waive.

c)   Defendant Seeks Private Information

Retainer agreements are clearly private. Plaintiff's counsel's firm has a right to not have its proprietary information produced. Likewise, the clients have a right to not disclose the terms by which they retained counsel. As such, for Defendant to overcome these privacy rights, the burden imposed on Defendant under California law is quite high. Because Defendant seeks to discover documents subject to the constitutional right of privacy, it bears the burden of establishing a compelling need for this discovery. *See Lantz*, *supra*, 28 Cal. App. 4th at 1853. Defendant's burden is a significant one that is not easily overcome. Defendant must establish that each document or piece of information sought is directly relevant to the action and essential to its fair resolution. *Id*. at 1854; *see, also, Britt*, *supra*, 20 Cal. 3d at 859.

Retainer agreements between Plaintiff's counsel and their clients have absolutely no relevance, no less the requisite "direct relevance," to the issues of this litigation, i.e. the various California *Labor Code* provisions which Defendant has allegedly violated as to Plaintiff and/or the entire class and/or Defendant's defenses to the same. Additionally, while Plaintiff's has disclosed some of the names of their clients, there are individuals who have yet to be disclosed. Such individuals, who have not filed any claims or been involved in the present lawsuit, have the right to not let Defendant know they have retained legal representation because, unless they are forced to, they may in fact never inform anyone that they have.  See *Tien, supra,* 139 Cal. App. 4th at 541. Defendant cannot invade the privacy rights of these individuals simply because it wants to continue its crusade of trying to disqualify Plaintiff's counsel. Such a justification does not amount to the direct relevance required to overcome a privacy objection.

          d)      Defendant's Request has No Relevance to the Claims of This Litigation

Under *Federal Rules of Civil Procedure*, Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As such, unlike the rules of California discovery in state Court, Federal law does not permit for discovery simply because it may "lead" to relevant evidence. Plain and simple, retainer agreements bear absolutely no relevance to this lawsuit.

          e)      Conclusion

Defendant has done nothing to show or demonstrate as to how Plaintiff's objections can be overcome nor why Defendant is legally entitled to such private, privileged and irrelevant materials. Accordingly, Defendant's request must be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## D.     CEC's Interrogatory No. 2.

CEC's Interrogatory No. 2

For each and every putative class member ("putative class member means and refers to any person who worked as a General Manager or Acting General Manager for CEC Entertainment, Inc. in California at any [time] since October 10, 2010) represented by any of the attorneys who are counsel for plaintiff Richard Sinohui in this action, state the date on which the attorney-client relationship with each putative class member was formed.

Plaintiff's Response to Interrogatory No. 2

Objection.  This request is overly broad, vague and ambiguous.  This request calls for information in violation of the attorney-client privilege and the attorney work product doctrine.  This request calls for speculation, lacks foundation and calls for a legal conclusion.  This request seeks information in violation of third parties' rights to privacy as provided to them by both the United States and California Constitutions.  This request seeks irrelevant information and/or information which is not reasonably calculated to lead the discovery of relevant and/or admissible evidence.

### 1.     CEC's Contentions

As with Request No. 54, this interrogatory seeks to determine if and when the attorney-client privilege may apply to communications between Plaintiff's counsel and general managers.  CEC presumes that any attorney-client relationship formed on the date each individually represented general manager signed a retainer agreement.  To that extent, this interrogatory would be duplicative of Request No. 54 (as narrowed by CEC).  However, if Plaintiff contends that the relationship began on a different date, he should identify that date.

The date on which the relationship began will aid in identifying communications or other documents that pre-date the formation of the attorney-client relationship and therefore are not privileged (or, at least, for which the privilege analysis would be different if Plaintiff contends they are somehow privileged), and thus will be essential in

1  resolving any potential privilege disputes.  The date on which the relationship formed

2  may also be relevant to whether any solicitation occurred.

3      During the meet and confer process, Plaintiff's counsel took the position that the

4  attorney-client privilege extends back to the very first communication had with each

5  general manager, because every one of them sought legal advice.  But even if that claim

6  were true, identifying just the date of formation of the attorney-client relationship, and

7  the fact of a meeting or communication leading up to it, would not reveal anything

8  privileged.  *Samuels*, 22 Cal. 4th at 23 ("the attorney-client privilege does not protect

9  'independent facts related to a communication; that a communication took place, and the

10  time, date and participants'").  There are no privacy concerns, because Plaintiff's

11  counsel's representation of general managers has already been disclosed.  *Hooser*, 84 Cal.

12  App. 4th at 1006.

13          2.    Plaintiff's Contentions

14              a)    Defendant Seeks to Invade the Attorney-Client Privilege

15      ROG No. 2 seek the dates any class member first spoke with Plaintiff's counsel,

16  i.e. the date they became a client. *See CA Evidence Code* §951, a **"'client' means a**

17  person **who... consults a lawyer for the purpose of retaining the lawyer or securing**

18  **legal service or advice from him in his...'"** [Bold Added] *See Hooser, supra, v.* 84 Cal.

19  App. 4th at 1003. ("The attorney-client privilege applies to all confidential

20  communications made to an attorney during preliminary discussions of the prospective

21  professional employment, as well as those made during the course of any professional

22  relationship resulting from such discussions."). This request does not seek the day that

23  the individual signed a retainer agreement, or it would have simply asked for such.

24  Accordingly, when a client decided to seek legal services, especially when they did not

25  actually retain counsel afterward, is privileged. Moreover, these individuals have a

26  privacy right, on their own, to not have to disclose when they thought to pursue their own

27  legal options nor when or what time they made decisions to retain counsel.

28

    b)  **Defendant Seeks Information s from Plaintiff Which He Does not Possess and is Not His to Provide**

  It must also be discussed that Defendant's ROG is not directed at these class member "clients," but, rather, is directed at Plaintiff. While Plaintiff himself may be in possession and/or control of information regarding his contacts with counsel, he is not in possession or control of the class members' information. This is exactly why Plaintiff asserted the objections of calls for speculation and lacks foundation.  If Defendant wants this information, it would have to subpoena such information directly from these individuals through document requests or depositions.

  Whereas Plaintiff's attorneys ultimately engaged with such class members in discussions as attorneys and clients, not just as witnesses, such information regarding these interactions is not within Plaintiff's control or possession, nor are within his right to disclose on behalf of third parties even if he possessed such. Because the information does not reflect Plaintiff's own privileged communications, but those of the class member clients, he does not own the privilege or the information – the class members do – thus, he cannot provide such information which would amount to unlawfully waiving their privileges and/or privacy rights on their behalf.  See *CA Evidence Code* §953.

  Accordingly, Defendant's ROG seeks such information from an improper source, requiring Plaintiff to provide privileged and private information he does not possess and, thus, requiring Plaintiff's attorneys, on behalf of Plaintiff, to waive a privilege and privacy right that are not his, but only the class members themselves', right to waive.

    c)  **Defendant Seeks Protected Attorney Work-Product**

  It is undisputed that an attorney's work product is not discoverable. *See California Code of Civil Procedure* §2018.030 (It is the policy of California that attorneys should be prevented from "taking undue advantage of their adversary's industry and efforts."); and *Federal Rules of Civil Procedure*, Rule 26(b)(3). Here, Defendant seeks work product without demonstrating how, in any way, there is a substantial need for it or a less intrusive means of obtaining the information sought.

1    Defendant's ROG essentially seeks to know who Plaintiff's counsel spoke to and

2    when Plaintiff's counsel did, i.e. when they became a client. However, Defendant is not

3    entitled to know who Plaintiff's counsel has spoken to nor whom Plaintiff counsel

4    deemed important enough to speak with as such information may implicate Plaintiff's

5    legal strategies and, thus, his work product. For the same reasons a privilege log cannot

6    be provided. *See Kintera, supra,* 219 F.R.D. at 507. A privilege log, here, would reveal

7    work product by providing the very information sought (i.e. potentially the dates of

8    communications, the subject matter of the communications and the individuals

9    communicated with).

10   As Defendant admits, such opinion work product which consists of Plaintiff's

11   attorneys' legal impressions and strategies may be discovered only in rare circumstances.

12   *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificate Litig.*, 116 F.R.D. at 302; and

13   *Kintera*, *supra*, 219 F.R.D. at 507.   As Defendant also admits, it is its own burden in

14   seeking Plaintiff's counsel's work product to show a "substantial need" and the "inability

15   to secure a substantial equivalent by alternate means without undue hardship."   *Green*,

16   *supra*, 226 F.R.D. at 652.  Other than, again, its wild speculation as part of its improper

17   fishing expedition, Defendant has failed to provide any evidence that the information it

18   seeks will not contain work product. Equally important, Defendant has failed to

19   demonstrate any "substantial need" for the information or that, where such exists, it

20   cannot be found through less intrusive means. *Id.*

21   Defendant has made it abundantly clear that the only reason it seeks such

22   information is not because it is relevant to the actual claims or defenses in this case, but,

23   rather, in order to continue to pursue its vindictive motion for disqualification. Given that

24   such a purpose has no bearing or relevance as to the actual issues of this case, there is no

25   "substantial need" for this information. In fact, <u>there is not a single authority in existence,</u>

26   <u>nor has Defendant provided any, which states that a party has a "substantial need for" or</u>

27   <u>may acquire that opposing attorneys' work product and/or privileged communications</u>

28   <u>because it hopes to disqualify that opposing counsel and remove them from the case.</u>

1

2

            d)      Defendant Seeks Private Information Reflecting the Identities of Class Members Who Spoke with Plaintiff's Counsel and Why They Did

3

       Client who engaged attorneys in seeking legal advice and/or representation have

4

the right to ensure that such efforts are not disclosed to anyone especially where, in many

5

instances in this case, such individuals have not signed retainer agreements, have not

6

disclosed that they have to anyone, have not participated in this case and/or have not yet

7

filed an individual lawsuit. See *Tien, supra,* 139 Cal. App. 4th at 541 ("[t]he identity of an

8

attorney's clients is sensitive personal information that implicates the clients' rights of

9

privacy" and "Clients routinely exercise their right to consult with counsel, seeking to

10

obtain advice on a host of matters that they reasonably expect to remain private.").

11

       As such, for Defendant to overcome these privacy rights, the burden imposed on

12

Defendant under California law is quite high. Because Defendant seeks to discover

13

information subject to the constitutional right of privacy, it bears the burden of

14

establishing a compelling need for this discovery.  *See Lantz*, *supra*, 28 Cal. App. 4th  at

15

1839, 1853. Defendant's burden is a significant one that is not easily overcome.

16

Defendant must establish that each piece of information sought is directly relevant to the

17

action and essential to its fair resolution.  *Id*. at 1854; *see, also, Britt*, *supra*, 20 Cal. 3d at

18

859. When a client spoke to an attorney has absolutely no relevance, no less the requisite

19

"direct relevance," to the issues of this litigation, i.e. the various California *Labor Code*

20

provisions which Defendant has allegedly violated as to Plaintiff and/or the entire class

21

and/or Defendant's defenses to the same.  Defendant cannot invade the privacy rights of

22

these individuals simply because it wants to continue its crusade of trying to disqualify

23

Plaintiff's counsel. Such a justification does not amount to the direct relevance required

24

to overcome a privacy objection.

25

            e)      Defendant's Request has No Relevance to the Claims of This Litigation

26

27

       Under *Federal Rules of Civil Procedure*, Rule 26(b), "[p]arties may obtain

28

discovery regarding any nonprivileged matter that is relevant to any party's claim or

73

defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As such, unlike the rules of California discovery in state Court, Federal law does not permit for discovery simply because it may "lead" to relevant evidence. Plain and simple, while the substance of the information communicated could have some relevance, when that individual spoke with Plaintiff's counsel has absolutely no relevance to this lawsuit.

### f)      Conclusion

Defendant has done nothing to show or demonstrate as to how Plaintiff's objections can be overcome nor why Defendant is legally entitled to such private, privileged and irrelevant materials. Accordingly, Defendant's request must be denied.

**E.      CEC's Interrogatory No. 3.**

CEC's Interrogatory No. 3

For each and every putative class member ("putative class member means and refers to any person who worked as a General Manager or Acting General Manager for CEC Entertainment, Inc. in California at any [time] since October 10, 2010) represented by any of the attorneys who are counsel for plaintiff Richard Sinohui in this action, state the date on which each putative class member signed a retainer agreement with any of those attorneys.

Plaintiff's Response to Interrogatory No. 3

Objection.  This request is overly broad, vague and ambiguous.  This request calls for information in violation of the attorney-client privilege and the attorney work product doctrine.  This request calls for speculation, lacks foundation and calls for a legal conclusion.  This request seeks information in violation of third parties' rights to privacy as provided to them by both the United States and California Constitutions.  This request

seeks irrelevant information and/or information which is not reasonably calculated to lead the discovery of relevant and/or admissible evidence.

### 1.   CEC's Contentions

This interrogatory seeks the same type of information that CEC seeks in Request No. 54, and the privilege log sought for Request No. 54 would satisfy this interrogatory. *See, e.g., Abels v. JBC Legal Grp., P.C.*, 2005 WL 3839308, at *4 (N.D. Cal. Oct. 21, 2005) (appropriate to provide privilege logs or the type of information that would need to be included in response to interrogatory); *Mancini v. Ins. Corp. of New York*, 2009 WL 1765295, at *3 (S.D. Cal. June 18, 2009) (ordering production of privilege log for every communication withheld from interrogatory responses under claim of privilege).  As discussed in connection with request No. 54, providing this information would not invade any privilege, work product, or privacy protections.  *See id.*  There is nothing about this information – the date retainer agreements were signed – that is vague and ambiguous, or calls for speculation or legal conclusions.

### 2.   Plaintiff's Contentions

#### a)   Defendant Seeks to Invade the Attorney-Client Privilege

ROG No. 3 seek the dates any class member first signed a retainer agreement with Plaintiff's attorneys. Defendant does not have a right to know when a client decided to officially retain an attorney, nor has Defendant provided any authority which stands for proposition that it is entitled to such privileged information. *See Hooser,* supra*, v.* 84 Cal. App. 4th at 1003. ("The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions."). When a client decided to obtain legal services and when they communicated with an attorney is privileged. Moreover, these individuals have a privacy right, on their own, to not have to disclose when they decided to obtain legal counsel. Likewise, Plaintiff cannot provide a privilege log with this

1   information given that the privilege log would provide nothing more than the same

2   information which Plaintiff is objected to being disclosed.

3           b)      **Defendant Seeks Information s from Plaintiff Which He Does**
                    **not Possess and is Not His to Provide**
4

5           It must also be discussed that Defendant's ROG is not directed at these class

6   member "clients," but, rather, is directed at Plaintiff. While Plaintiff himself may be in

7   possession and/or control of information regarding when he retained counsel, he is not in

8   possession or control of when the class members' retained counsel. This is exactly why

9   Plaintiff asserted the objections of calls for speculation and lacks foundation.  If

10  Defendant wants this information, it would have to subpoena such information directly

11  from these individuals through document requests or depositions.

12          Whereas class members retained Plaintiff's attorneys on their own, when they did

13  or why is not within Plaintiff's control or possession, nor are within his right to disclose

14  on behalf of third parties even if he possessed such. Because the information does not

15  reflect Plaintiff's own privileged retainer agreement, but the retainer agreements of class

16  members clients, he does not own the documents nor does he own the privilege or the

17  information – the class members do – thus, he cannot provide such information which

18  would amount to unlawfully waiving their privileges and/or privacy rights on their

19  behalf.  See *CA Evidence Code* §953.

20          Accordingly, Defendant's ROG seeks such information from an improper source,

21  requiring Plaintiff to provide privileged and private information he does not possess and,

22  thus, requiring Plaintiff's attorneys, on behalf of Plaintiff, to waive a privilege and

23  privacy right that are not his, but only the class members themselves', right to waive.

24          c)      **Defendant Seeks Private Information Reflecting the Identities**
                    **of Class Members Who Retained Plaintiff's Counsel and Why**
25                  **They Did**

26          Clients who engaged attorneys in seeking representation have the right to ensure

27  that such efforts are not disclosed to anyone especially where, in many instances in this

28  case, such individuals have not disclosed that they have retained counsel to anyone, have

not participated in this case and/or have not yet filed an individual lawsuit. See *Tien, supra,* 139 Cal. App. 4th at 541 ("[t]he identity of an attorney's clients is sensitive personal information that implicates the clients' rights of privacy" and "Clients routinely exercise their right to consult with counsel, seeking to obtain advice on a host of matters that they reasonably expect to remain private.").

As such, for Defendant to overcome these privacy rights, the burden imposed on Defendant under California law is quite high. Because Defendant seeks to discover information subject to the constitutional right of privacy, it bears the burden of establishing a compelling need for this discovery. *See Lantz*, *supra*, 28 Cal. App. 4th at 1853. Defendant's burden is a significant one that is not easily overcome. Defendant must establish that each piece of information sought is directly relevant to the action and essential to its fair resolution. *Id*. at 1854; *see, also, Britt*, *supra*, 20 Cal. 3d at 859. When a client retained an attorney has absolutely no relevance, no less the requisite "direct relevance," to the issues of this litigation, i.e. the various California *Labor Code* provisions which Defendant has allegedly violated as to Plaintiff and/or the entire class and/or Defendant's defenses to the same. Defendant cannot invade the privacy rights of these individuals simply because it wants to continue its crusade of trying to disqualify Plaintiff's counsel. Such a justification does not amount to the direct relevance required to overcome a privacy objection.

d)   Defendant's Request has No Relevance to the Claims of This Litigation

Under *Federal Rules of Civil Procedure*, Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As such, unlike the rules of California discovery in state Court, Federal

1   law does not permit for discovery simply because it may "lead" to relevant evidence.
2   Plain and simple, when an individual retained Plaintiff's counsel has absolutely no
3   relevance to this lawsuit.

4          e)     Conclusion

5       Defendant has done nothing to show or demonstrate as to how Plaintiff's
6   objections can be overcome nor why Defendant is legally entitled to such private,
7   privileged and irrelevant information. Accordingly, Defendant's request must be denied.

8   **F.    CEC's Interrogatory No. 4.**

9   <u>CEC's Interrogatory No. 4</u>

10      Identify ("Identify" means the name and job position) each and every attorney,
11  employee, or agent of either of the law firms representing plaintiff Richard Sinohui in this
12  action who has had any communications with a putative class member ("putative class
13  member means and refers to any person who worked as a General Manager or Acting
14  General Manager for CEC Entertainment, Inc. in California at any [time] since October
15  10, 2010) in this action.

16  <u>Plaintiff's Response to Interrogatory No. 4</u>

17      Objection. This request is overly broad, vague and ambiguous. This request calls
18  for information in violation of the attorney-client privilege and the attorney work product
19  doctrine. This request calls for speculation, lacks foundation and calls for a legal
20  conclusion. This request seeks information in violation of third parties' rights to privacy
21  as provided to them by both the United States and California Constitutions. This request
22  seeks irrelevant information and/or information which is not reasonably calculated to lead
23  the discovery of relevant and/or admissible evidence.

24         1.    <u>CEC's Contentions</u>

25      To the extent it was ever unclear, CEC seeks the identity of any of Plaintiff's
26  attorneys (or others working for those attorneys) called, wrote to (or received written
27  communications from), interviewed, or met with general managers from the class list
28  produced by CEC. This information calls for no speculation or legal conclusion. Nor

does it implicate the privacy concerns of any general managers, as it does not even ask for the identity of general managers.

CEC's interest in obtaining this information is clear.  Knowing who communicated with general managers will help assess whether all responsive communications with general managers have been produced, or identified on a privilege log.  In investigating counsel's communications with general managers (whether in its own interviews or depositions), CEC needs to know the identity of the attorneys with whom GMs may have spoken.  It is quite possible that the general managers will not remember all the names themselves.

There is no plausible argument that this information is privileged or work product.  The information sought – i.e. the identity of attorneys involved in communications – is the same type of information that is properly included in a privilege log.  *See, e.g., Abels*, 2005 WL 3839308, at *4 (appropriate to provide privilege logs or the type of information that would need to be included in response to interrogatory); *Mancini*, 2009 WL 1765295, at *3 (ordering production of privilege log for every communication withheld from interrogatory responses under claim of privilege).  Knowing the names of attorneys who spoke with general managers will not reveal anything about the content of those communications, so it would not reveal anything privileged or anything protected as work product.

Plaintiff should be compelled to respond to Interrogatory No. 4.  *See Coy*, 58 Cal. 2d at 219-20 (the fact of a meeting or communication with an attorney "is not a matter within the purview of the attorney-client privilege, even though it 'refers' to that relationship"); *Samuels*, 22 Cal. 4th at 23 ("the attorney-client privilege does not protect 'independent facts related to a communication; that a communication took place, and the time, date and participants'") (citation omitted).

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2

2.   <u>Plaintiff's Contentions</u>

a)   Defendant Seeks to Invade the Attorney-Client Privilege

ROG No. 4 seeks to know who spoke with an individual client. *See CA Evidence Code* §951, a **"'client' means a person who... consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his...'"** [Bold Added] *See Hooser, supra, v.* 84 Cal. App. 4th at 1003. ("The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions."). Revealing the identities of who a client spoke with would inherently reveal that the client had any communications. For this reason alone, the information is privileged and cannot be provided.

b)   Defendant Seeks Information s from Plaintiff Which He Does not Possess and is Not His to Provide

It must also be discussed that Defendant's ROG is not directed at these class member "clients," but, rather, is directed at Plaintiff. While Plaintiff himself may be in possession and/or control of information regarding his contacts with counsel, he is not in possession or control of the class members' information. This is exactly why Plaintiff asserted the objections of calls for speculation and lacks foundation. Should Defendant require such information, assuming such efforts would not also warrant objection, Defendant would need to subpoena documents from or acquire testimony from the class members themselves.

Whereas Plaintiff's attorneys ultimately engaged with such class member clients in discussions as attorneys and clients, not just as witnesses or unrepresented class members, such information regarding these interactions is not within Plaintiff's control or possession, nor are within his right to disclose on behalf of third parties even if he possessed such. Because the information does not reflect Plaintiff's own privileged communications, but those of the class members clients, he does not own the privilege ir

the information – the class members do – thus, he cannot provide such information which would amount to unlawfully waiving their privileges and/or privacy rights on their behalf.  See *CA Evidence Code* §953.

Accordingly, Defendant's ROG seeks such information from an improper source, requiring Plaintiff to provide privileged and private information he does not possess and, thus, requiring Plaintiff's attorneys, on behalf of Plaintiff, to waive a privilege and privacy right that are not his, but only the class members themselves', right to waive.

c)     Defendant Seeks Protected Attorney Work-Product

It is undisputed that an attorney's work product is not discoverable. *See California Code of Civil Procedure* §2018.030 (It is the policy of California that attorneys should be prevented from "taking undue advantage of their adversary's industry and efforts."); and *Federal Rules of Civil Procedure*, Rule 26(b)(3). Here, Defendant seeks work product without demonstrating how, in any way, there is a substantial need for it or a less intrusive means of obtaining the information sought.

Defendant's ROG essentially seeks to know who Plaintiff's counsel spoke to, i.e. Defendant seeks the names of Plaintiff's counsel's employees who spoke to class members so that it can determine who they spoke to, when the conversations occurred and what was discussed. However, Defendant is not entitled to know who Plaintiff's counsel has spoken to nor whom Plaintiff decided should talk to the class members as such information may implicate Plaintiff's legal strategies and, thus, his work product. For the same reasons a privilege log cannot be provided. *See Kintera, supra,* 219 F.R.D. at 507.

As Defendant admits, such opinion work product which consists of Plaintiff's attorneys' legal impressions and strategies may be discovered only in rare circumstances. *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificate Litig*., 116 F.R.D. 297, 302 (C.D. Cal. 1987); and *Kintera*, *supra*, 219 F.R.D. at 507.   As Defendant also admits, it is its own burden in seeking Plaintiff's counsel's work product to show a "substantial need" and the "inability to secure a substantial equivalent by alternate means without undue

1  hardship." *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005). Other than, again, its

2  wild speculation as part of its improper fishing expedition, Defendant has failed to

3  provide any evidence that the information it seeks will not contain work product. Equally

4  important, Defendant has failed to demonstrate any "substantial need" for the information

5  or that, where such exists, it cannot be found through less intrusive means. *Id.*

6        Defendant has made it abundantly clear that the only reason it seeks such

7  information is not because it is relevant to the actual claims or defenses in this case, but,

8  rather, in order to continue to pursue its vindictive motion for disqualification. Given that

9  such a purpose has no bearing or relevance as to the actual issues of this case, there is no

10 "substantial need" for this information. In fact, <u>there is not a single authority in existence,</u>

11 <u>nor has Defendant provided any, which states that a party has a "substantial need for" or</u>

12 <u>may acquire that opposing attorneys' work product and/or privileged communications</u>

13 <u>because it hopes to disqualify that opposing counsel and remove them from the case</u>.

14              d)    Defendant Seeks Private Information Reflecting the Identities
15                   of Class Members Who Spoke with Plaintiff's Counsel and the
                    Private Identities of Plaintiff's Counsel's Employees

16       Clients who engaged attorneys in seeking legal advice and/or representation have

17 the right to ensure that such efforts are not disclosed to anyone especially where, in many

18 instances in this case, such individuals have not signed retainer agreements, have not

19 disclosed that they have to anyone, have not participated in this case and/or have not yet

20 filed an individual lawsuit. See *Tien, supra,* 139 Cal. App. 4th at 541 ("[t]he identity of an

21 attorney's clients is sensitive personal information that implicates the clients' rights of

22 privacy" and "Clients routinely exercise their right to consult with counsel, seeking to

23 obtain advice on a host of matters that they reasonably expect to remain private."").

24 Equally important as to this specific request, Plaintiff's attorneys' employees have a

25 privacy right to not have their identities disclosed nor to be dragged into this lawsuit

26 simply for doing their jobs. *See, e.g., Life Technologies Corp*, *supra*, 197 Cal. App. 4th

27 640 (information which can only be obtained from an employee's personnel file is subject

28 to the constitutional right to privacy).

As such, for Defendant to overcome these privacy rights, the burden imposed on Defendant under California law is quite high. Because Defendant seeks to discover the identities of individuals who possess constitutional privacy rights that prevent such disclosure, Defendant bears the burden of establishing a compelling need for this discovery. *See Lantz*, *supra*, 28 Cal. App. 4th at 1853. Defendant's burden is a significant one that is not easily overcome. Defendant must establish that all of the identities and names sought are directly relevant to the action and essential to its fair resolution. *Id.* at 1854; *see, also, Britt*, *supra*, 20 Cal. 3d at 859. Who spoke to any specific class member has absolutely no relevance, no less the requisite "direct relevance," to the issues of this litigation, i.e. the various California *Labor Code* which Defendant has allegedly violated as to Plaintiff and/or the entire class and/or Defendant's defenses to the same.  Defendant cannot invade the privacy rights of these individuals simply because it wants to continue its crusade of trying to disqualify Plaintiff's counsel. Such a justification does not amount to the direct relevance required to overcome a privacy objection.

> e)   Defendant's Request has No Relevance to the Claims of This Litigation

Under *Federal Rules of Civil Procedure*, Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As such, unlike the rules of California discovery in state Court, Federal law does not permit for discovery simply because it may "lead" to relevant evidence. Plain and simple, while the substance of the information communicated could have some relevance, who spoke to the individual class member is completely irrelevant to this lawsuit.

1

   f)    Conclusion

2

   Defendant has done nothing to show or demonstrate as to how Plaintiff's

3

objections can be overcome nor why Defendant is legally entitled to such private,

4

privileged and irrelevant information. Accordingly, Defendant's request must be denied.

5

**G.    CEC's Interrogatory No. 5.**

6

CEC's Interrogatory No. 5

7

   For every putative class member ("putative class member means and refers to any

8

person who worked as a General Manager or Acting General Manager for CEC

9

Entertainment, Inc. in California at any [time] since October 10, 2010) with whom any of

10

the attorneys who are counsel for plaintiff Richard Sinohui's action has spoken, identify

11

the date on which such attorney(s) first spoke with the putative class member and who

12

initiated the contact.

13

   Plaintiff's Response to Interrogatory No. 5

14

   Objection.  This request is overly broad, vague and ambiguous.  This request is

15

compound.  This request calls for information in violation of the attorney-client privilege

16

and the attorney work product doctrine.  This request calls for speculation, lacks

17

foundation and calls for a legal conclusion.  This request seeks information in violation of

18

third parties' rights to privacy as provided to them by both the United States and

19

California Constitutions.  This request seeks irrelevant information and/or information

20

which is not reasonably calculated to lead the discovery of relevant and/or admissible

21

evidence.

22

   1.    CEC's Contentions

23

   CEC clarifies that this interrogatory is asking to know the first time Plaintiff's

24

counsel had verbal contact with each general manager, and not subsequent contacts with

25

the same general manager (even if that subsequent contact was with a different member

26

of Plaintiff's legal team).  There is nothing about this request that calls for speculation or

27

legal contentions.

28

CEC has an interest in knowing when verbal contact was first made, and who initiated that contact, because it will help separate any potentially privileged communications from non-privileged ones. Plaintiff contends that every general manager sought legal advice. But if Plaintiff's counsel initiated the first verbal contact, prior to any written contact *from* the general manager, then the conversation obviously did not begin as one in which the general manager sought legal advice. Even if legal advice was sought at some later point, the conversation(s) prior to that one would not be privileged.

There is also nothing privileged about the date of a communication, or even who initiated it, because such date would not reveal the *content* of the communication, and it is only that *content* that is privileged. *See Coy*, 58 Cal. 2d at 219-20; *Samuels*, 22 Cal. 4th at 23. Nor is there any privacy interest in a communication initiated by Plaintiff's counsel. And even if the first verbal contact were initiated by a general manager, there is no privacy interest left to be protected if that general manager's identity and cooperation with Plaintiff's counsel is already known. *Hooser*, 84 Cal. App. 4th at 1006. Therefore, Plaintiff should be compelled to respond to Interrogatory No. 5.

2. <u>Plaintiff's contentions</u>

a) Defendant Seeks to Invade the Attorney-Client Privilege

ROG No. 5 effectively seek the dates any class member first spoke with Plaintiff's counsel, i.e. the date they became a client, and who initiated the contact first which led to that individual becoming a client. *See CA Evidence Code* §951, a **"'client' means a person who... consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his..."** [Bold Added] *See Hooser, supra, v.* 84 Cal. App. 4th at 1003. ("The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions.").

Accordingly, when a client decided to seek legal services, especially when they did not actually retain counsel afterward, is privileged. So is whether such clients initiated the

contact themselves, because that would also directly require revealing attorney client-communications, i.e. communicating motives through their actions. While Defendant seeks information regarding who initiated contact, there are no legal authorities, nor has Defendant provided any, which voids or negates the privilege simply because counsel picked up the phone first as opposed to the class member doing so. Rather, no matter how the conversation started or who started it, the attorney-client privilege is created when the individual sought out legal advice and/or legal representation. Moreover, these individuals have a privacy right, on their own, to not have to disclose when they thought to pursue their own legal options, when or what time they made decisions to retain counsel, or whether they sought out attorneys before seeking representation or that it was merely that they decided they wanted legal representation in the midst of an informative conversation and/or after receiving legal advice which they solicited.

b)   Defendant Seeks Information s from Plaintiff Which He Does not Possess and is Not His to Provide

It must also be discussed that Defendant's ROG is not directed at these class member "clients," but, rather, is directed at Plaintiff. While Plaintiff himself may be in possession and/or control of information regarding his contacts with counsel, he is not in possession or control of the class members' information. This is exactly why Plaintiff asserted the objections of calls for speculation and lacks foundation.  If Defendant wants this information, it would have to subpoena such information directly from these individuals through document requests or depositions.

Whereas Plaintiff's attorneys ultimately engaged with such class members in discussions as attorneys and clients, not just as witnesses, such information regarding these interactions is not within Plaintiff's control or possession, nor are within his right to disclose on behalf of third parties even if he possessed such. Because the information does not reflect Plaintiff's own privileged communications, or even non-privileged communications, but those of the class member clients, he does not own the privilege nor the information – the class members do – thus, he cannot provide such information which

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2

would amount to unlawfully waiving their privileges and/or privacy rights on their behalf.  See *CA Evidence Code* §953.

Accordingly, Defendant's ROG seeks such information from an improper source, requiring Plaintiff to provide privileged and private information he does not possess and, thus, requiring Plaintiff's attorneys, on behalf of Plaintiff, to waive a privilege and privacy right that are not his, but only the class members themselves', right to waive.

### c) Defendant Seeks Protected Attorney Work-Product

It is undisputed that an attorney's work product is not discoverable. *See California Code of Civil Procedure* §2018.030 (It is the policy of California that attorneys should be prevented from "taking undue advantage of their adversary's industry and efforts."); and *Federal Rules of Civil Procedure*, Rule 26(b)(3). Here, Defendant seeks work product without demonstrating how, in any way, there is a substantial need for it or a less intrusive means of obtaining the information sought.

Defendant's ROG seeks to know who Plaintiff's counsel spoke to, when Plaintiff's counsel did and who initiated the contact. However, Defendant is not entitled to know who Plaintiff's counsel has spoken to nor whom Plaintiff counsel deemed important enough to speak with as such information will implicate Plaintiff's legal strategies and, thus, his work product. For the same reasons, a privilege log cannot be provided. *See Kintera, supra,* 219 F.R.D. at 507. A privilege log, here, would reveal work product by providing the very information sought (i.e. potentially the dates of communications, the subject matter of the communications and the individuals communicated with).

As Defendant admits, such opinion work product which consists of Plaintiff's attorneys' strategies may be discovered only in rare circumstances.  *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificate Litig*., 116 F.R.D. at 302; and *Kintera*, *supra*, 219 F.R.D. at 507.  As Defendant also admits, it is its own burden in seeking Plaintiff's counsel's work product to show a "substantial need" and the "inability to secure a substantial equivalent by alternate means without undue hardship."  *Green, supra,* 226 F.R.D. at 652.  Other than, again, its wild speculation as part of its improper fishing

1   expedition, Defendant has failed to provide any evidence that the information it seeks

2   will not contain work product. Equally important, Defendant has failed to demonstrate

3   any "substantial need" for the information or that, where such exists, it cannot be found

4   through less intrusive means. *Id.*

5         Defendant has made it abundantly clear that the only reason it seeks such

6   information is not because it is relevant to the actual claims or defenses in this case, but,

7   rather, in order to continue to pursue its vindictive motion for disqualification. Given that

8   such a purpose has no bearing or relevance as to the actual issues of this case, there is no

9   "substantial need" for this information. In fact, <u>there is not a single authority in existence,</u>

10   <u>nor has Defendant provided any, which states that a party has a "substantial need for" or</u>

11   <u>may acquire that opposing attorneys' work product and/or privileged communications</u>

12   <u>because it hopes to disqualify that opposing counsel and remove them from the case</u>.

13           d)    Defendant Seeks Private Information Reflecting the Identities

14                   of Class Members Who Spoke with Plaintiff's Counsel, When

                They Did and Why They Did

15         Client who engaged attorneys in seeking legal advice and/or representation have

16   the right to ensure that such efforts are not disclosed to anyone especially where, in many

17   instances in this case, such individuals have not signed retainer agreements, have not

18   disclosed that they have to anyone, have not participated in this case and/or have not yet

19   filed an individual lawsuit. See *Tien, supra,* 139 Cal. App. 4th at 541 ("[t]he identity of an

20   attorney's clients is sensitive personal information that implicates the clients' rights of

21   privacy" and "Clients routinely exercise their right to consult with counsel, seeking to

22   obtain advice on a host of matters that they reasonably expect to remain private.").

23   Moreover, individuals who never signed a retainer agreement but still assisted Plaintiff's

24   counsel, despite many of which still being currently employed by Defendant, have the

25   right, especially in fear of potential retaliation by Defendant, to ensure that Defendant

26   remains unaware of their direct involvement in this case. *Id.*

27         As such, for Defendant to overcome these privacy rights, the burden imposed on

28   Defendant under California law is quite high. Because Defendant seeks to discover

information subject to the constitutional right of privacy, it bears the burden of establishing a compelling need for this discovery. *See Lantz, supra,* 28 Cal. App. 4th at 1853. Defendant's burden is a significant one that is not easily overcome. Defendant must establish that each piece of information sought is directly relevant to the action and essential to its fair resolution. *Id*. at 1854; *see, also, Britt, supra,* 20 Cal. 3d at 859. When a client spoke to an attorney has absolutely no relevance, no less the requisite "direct relevance," to the issues of this litigation, i.e. the various California *Labor Code* provisions which Defendant has allegedly violated as to Plaintiff and/or the entire class and/or Defendant's defenses to the same.  Defendant cannot invade the privacy rights of these individuals simply because it wants to continue its crusade of trying to disqualify Plaintiff's counsel. Such a justification does not amount to the direct relevance required to overcome a privacy objection.

> e)   Defendant's Request has No Relevance to the Claims of This Litigation

Under *Federal Rules of Civil Procedure*, Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As such, unlike the rules of California discovery in state Court, Federal law does not permit for discovery simply because it may "lead" to relevant evidence. Plain and simple when an class members and/or class member "client" spoke with Plaintiff's counsel has absolutely no relevance to the claims or defenses of this lawsuit.

> f)   Conclusion

Defendant has done nothing to show or demonstrate as to how Plaintiff's objections can be overcome nor why Defendant is legally entitled to such private, privileged and irrelevant materials. Accordingly, Defendant's request must be denied.

### H.     Depositions of Putative Class Members.

#### 1.     CEC's Contentions

After Plaintiff filed his motion for class certification, CEC deposed six putative class member witnesses who were Plaintiff declarants.  Plaintiff's counsel refused to allow the witnesses to answer a number of simple and non-privileged questions about their contacts with counsel.  Counsel objected on the grounds of privilege, and instructed witnesses not to answer, among other things: (1) whether they had met with Plaintiff's counsel before the deposition; (2) how many times they had spoken to Plaintiff's counsel by telephone; (3) when they first spoke to Plaintiff's counsel; (4) who initiated the first contact between them; and (5) whether the first contact was by telephone.  *See, e.g.,* Petersen Decl., ¶¶11-16, Exs. J-O (Escobar Tr. 9:22-13:8 (preparing for depo), 181:5-193:17 (discussion with attorneys); Cardenas Tr. 11:17-21 (preparing for depo), 144:8-149:17 (discussion with attorneys); Chavez Tr. 11:15-12:23 (preparing for depo), 197:25-202:16 (discussion with attorneys); Rivas Tr. 12:1-13:21 (preparing for depo), 205:21-206:21 (discussion with attorneys); Troy Tr. 12:6-25 (preparing for depo), 184:20-186:2 (discussion with attorneys); Zapata Tr. 11:22-12-19 (preparing for depo), 151:20-153:25, 155:5-156:10 (discussion with attorneys)).

These instructions were improper, as the information sought is not privileged.  *Coy*, 58 Cal. 2d at 219-20 (the fact of a meeting or communication with an attorney "is not a matter within the purview of the attorney-client privilege, even though it 'refers' to that relationship"); *Samuels*, 22 Cal. 4th at 23 ("the attorney-client privilege does not protect 'independent facts related to a communication; that a communication took place, and the time, date and participants'") (quoting *State Farm*, 54 Cal. App. 4th at 640); *see also Teknowledge Corp. v. Akamai Techs., Inc.*, 2004 WL 2480705, at *1 (N.D. Cal. Aug. 10, 2004) (observing that "information itself is not privileged, only the confidential communication by which it is shared between lawyer and client," and permitting questions to establish whether communications were privileged); *see also In re Uehling*, 2013 WL 3283212, at *9 (E.D. Cal. June 27, 2013) (deposition questions regarding

whether communications with an attorney ever took place are not protected by the attorney-client privilege).

*Teknowledge* is instructive.  The plaintiff's counsel instructed his client not to answer "questions designed to establish if the attorney-client privilege applie[d]," arguing that this "category" was covered by the attorney-client privilege.  *Teknowledge*, 2004 WL 2480705, at *1.  The Court disagreed, finding that "questions seeking to establish whether an attorney-client communication took place [i.e., whether a privilege applied] do not violate the privilege."  *Id.*  As in *Teknowledge*, CEC requests an order requiring the six witnesses re-appear for deposition to answer the same types of questions, which relate to the fact of communications with Plaintiff's counsel and the possible existence of a privilege.  *See id.*  CEC should also be entitled to ask follow-up questions regarding the content of such communications, leading up to, but prior to, the formation of the attorney-client relationship.  *See id.*  CEC is not seeking to ask questions about the content of privileged communications (e.g. communications after a general manager signed a retainer agreement), but should be permitted to question the witnesses about non-privileged communications that predate the formation of the attorney-client relationship, as well as questions which are relevant to establishing whether and when communications became privileged.  Plaintiff and/or his counsel should pay the costs associated with reopening the depositions.  *See, e.g., Cohen v. Trump*, 2015 WL 3617124, at *4 (S.D. Cal. June 9, 2015) (ordering party who improperly instructed witness not to answer based on attorney-client privilege to pay costs associated with reopening depositions, including court reporter and videographer).

### 2.   Plaintiff's Contentions

#### a)   Defendant Seeks to Invade the Attorney-Client Privilege

Each of Defendant's proposed deposition questions seek privileged information.  *See CA Evidence Code* §951, a **"'client' means a person who... consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his..."** [Bold Added] *See Hooser, supra, v.* 84 Cal. App. 4th at 1003. ("The attorney-

client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions.").  For example, a question regarding a client's knowledge of whether there were two law firms involved in the case could only be answered by revealing information communicated to them by their legal representation. Likewise, making no mention that the terms of any retainer agreement are private and that a retainer agreement is not required to create an attorney-client privilege, asking a class member to reveal whether they signed a retainer agreement would also implicate information provided to them by an attorney as they would only know if they signed a retainer agreement because an attorney presented it to them and explained to them what it was. Similarly, any question about whether a class member believes they needed to sign a retainer or declaration to participate in the lawsuit would also require the release of privileged communications because it directly implicates information exchanged between counsel and the client.

Even ignoring that Defendant's lone authority - Teknowledge Corp. v. Akamai Techs., Inc., 2004 WL 2480705 (N.D. Cal. 2004) -represent merely persuasive federal law, not binding California law, Teknowledge still stands in opposite of Defendant's position.. In *Teknowledge,* an intellectual property case, the Court merely ruled that questions meant to establish a privilege may be asked, i.e. that if it was unclear as to whether an attorney-client relationship existed in the first place, a party could ask questions for the sole purpose of establishing that relationship. *Id*. Notably, the Court did not provide any examples of what such questions would be.[11]

---

11 Defendant also briefly cites to Cohen v. Trump, 2015 WL 3617124 (S.D. Cal. 2015). However,  Cohen is also distinguishable, whereby the Court only required the disclosure of a fee arrangement because one of the parties in the action was paying for the third party witnesses' attorneys fees for independently retained counsel, thus implicating a bias. Id. This situation does not exist here. The class members have their own claims and sought out legal representation of, and advice to, those claims on their own accord.

*In* opposite of *Teknowledge,* at the class members' depositions, it was undisputed that an attorney-client relationship existed and that there were attorney-client communications. especially since the deponents themselves confirmed that Plaintiff's counsel served as their legal representation.  In fact, these questions at issue do not seek to discover whether there was an attorney-client relationship or that such communications were between an attorney and their client – again, this is undisputed. Instead, these questions directly seek to obtain knowledge regarding the circumstances and motivations by which the attorney-client relationship was created in hopes of finding information supporting Defendant's "theories" regarding Plaintiff's counsel alleged impropriety and/or in hopes that the deponent would reveal privileged work product. For these simple reasons, Defendant's demands must be rejected.

b)      Defendant Seeks Protected Attorney Work-Product

It is undisputed that an attorney's work product is not discoverable. *See California Code of Civil Procedure* §2018.030 (It is the policy of California that attorneys should be prevented from "taking undue advantage of their adversary's industry and efforts."); and *Federal Rules of Civil Procedure*, Rule 26(b)(3). Here, each of the deposition questions objected to implicate undiscoverable attorney work product. For example, the question as to whether a class member had met with counsel prior to the deposition speaks to the preparation of the client who, in their own right, has legal claims. As such, the question implicates that class members' work product in preparation for potential litigation. For the same reasons, questions relating to the names of attorneys the class members spoke to, when they first spoke to Plaintiff's counsel's firm and how many times they spoke to Plaintiff's counsel all implicate work product in that such questions also relate to the preparation of such individuals for their depositions and/or the pursuit of their own legal claims. Thus, such information is, at the least, certainly work product (created in anticipation of litigation and/or in order to at least protect one's ability to litigate in the future if that decision is made) which Defendant has no right to possess.

93

c)      Defendant Seeks Private Information it is Not Entitled To

Client who engaged attorneys in seeking legal advice and/or representation have the right to ensure that such efforts are not disclosed to anyone especially where most of these deponents are current employees of Defendant who, in their own right, are likely scared of retaliation. See *Tien, supra,* 139 Cal. App. 4th at 541. These individuals have the right to not have to disclose the level of their participation in this lawsuit nor how far they have gone to assist Plaintiff's counsel, which is essentially what these questions are asking.  As many of these witnesses are still employed, they also have a right to ensure that Defendant knows as little of their motivations as possible, or else subject themselves to increased scrutiny by Defendant and/or retaliation as current employees. Id.

As such, for Defendant to overcome these privacy rights, the burden imposed on Defendant under California law is quite high. Because Defendant seeks to discover information subject to the constitutional right of privacy, it bears the burden of establishing a compelling need for this discovery.  *See Lantz*, *supra*, 28 Cal. App. 4th at 1853. Defendant's burden is a significant one that is not easily overcome. Defendant must establish that each piece of information sought is directly relevant to the action and essential to its fair resolution.  *Id*. at 1854; *see, also, Britt¸supra*, 20 Cal. 3d at 859. When a client spoke with Plaintiff's counsel, when they initiated legal representation and/or how often they spoke with Plaintiff's counsel, has absolutely no relevance, no less the requisite "direct relevance," to the issues of this litigation, i.e. the various California *Labor Code* provisions which Defendant has allegedly violated as to Plaintiff and/or the entire class and/or Defendant's defenses to the same.  Defendant cannot invade the privacy rights of these individuals simply because it wants to continue its crusade of trying to disqualify Plaintiff's counsel. Such a justification does not amount to the direct relevance required to overcome a privacy objection.

d)      Defendant's Request has No Relevance to the Claims of This Litigation

Under *Federal Rules of Civil Procedure*, Rule 26(b), "[p]arties may obtain

94

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As such, unlike the rules of California discovery in state Court, Federal law does not permit for discovery simply because it may "lead" to relevant evidence. Plain and simple, while the substance of the information communicated could have some relevance, when that individual spoke with Plaintiff's counsel, when they initiated legal representation and/or how often they spoke with Plaintiff's counsel, and when, has absolutely no relevance to this lawsuit.

e)      Conclusion

Defendant has done nothing to show or demonstrate as to how Plaintiff's objections can be overcome nor why Defendant is legally entitled to such private, privileged and irrelevant information. Accordingly, Defendant's request must be denied.

## III.   SANCTIONS

### A.    CEC's Contentions

When a motion to compel is granted—or if the disclosure or requested discovery is provided after the motion was filed—the nonmoving party or its attorneys must pay the reasonable expenses and attorney fees incurred in making the motion, unless the nonmoving party's conduct is "substantially justified" or the award would be "unjust." *See* Fed. R. Civ. P. 37(a)(5)(A); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171-72 (9th Cir. 1994); *see also Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982) (noting that "the imposition of sanctions for failure to make discovery is fairly common").

Even if a few of counsel's objections may have been asserted in good faith, there is no justification for the refusal to provide a privilege log.  Likewise, the refusal to allow witnesses to answer simple deposition questions about their communications that do not

95

even arguably call for privileged information cannot be justified.  Counsel is stonewalling, hiding behind privilege and work product objections, and denying CEC even the most basic information needed to test those objections.  Accordingly, pursuant to Rule 37, the Court should sanction Plaintiff and/or Plaintiff's counsel in the amount of CEC's fees incurred in bringing this motion.  *See, e.g.*, *Shaw v. Tujunga Rests., Inc.*, No. CV 12-2193-SVW (SPx), 2012 WL 5974184, at *4 (C.D. Cal. Nov. 6, 2012) (awarding attorney's fees and costs where responding party "never articulated a legitimate reason not to permit a clearly relevant inspection"); Fed. R. Civ. P. 37(b)(2)(C), (d)(3) (responding party, his counsel, or both may be ordered to pay moving party's attorney's fees and costs).  The specific amount of fees should be determined once this dispute has been resolved.

## B.    Plaintiff's Contentions

Pursuant to Federal Rules of Civil Procedure, Rule 37(a)(5)(A)(ii), the Court must not award sanctions or the payment of the motion if the objections were substantially justified. Here, each objection asserted by Plaintiff was substantially justified, thus, at the very least, even if Defendant is successful, sanctions should not be awarded. To the contrary, however, pursuant to Federal Rules of Civil Procedure, Rule 37(a)(5)(B), Defendant should be made to pay sanctions to Plaintiff  for bearing the expense of responding to its motion, which must be denied in whole in that it seeks to obtain privileged, irrelevant and private materials and information it is clearly not entitled to.

Dated:  April 14, 2016                   AKIN GUMP STRAUSS HAUER & FELD LLP
                                         GARY M. MCLAUGHLIN
                                         CHRISTOPHER K. PETERSEN
                                         JONATHAN S. CHRISTIE

                                         By   */s/ Gary M. McLaughlin***
                                               Gary M. McLaughlin
                                           Attorneys for Defendant, CEC
                                            ENTERTAINMENT, INC.

1    Dated:  April 14, 2016                    TRUSH LAW OFFICE, APC
2                                              JAMES M. TRUSH

3                                              PERONA LANGER BECK SERBIN
                                               MENDOZA, APC
4                                              TODD H. HARRISON
                                               BRENNAN S. KAHN

5
6                                              By_____/s/ Brennan S. Kahn_____
                                                          Brennan S. Kahn
7                                                        Attorneys for Plaintiff,
                                                          Richard Sinohui

8            **Pursuant to Local Rule 5-4.3.4(a)(2), the filing party has obtained the

9    authorization and approval of all signatories listed to file this stipulation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2